[Civ. No. 27225. Second Dist., Div. Three. Oct. 9, 1964.]

VALINDA BUILDERS, INC., Plaintiff and Respondent, v. HAROLD J. BISSNER et al., Defendants and Appellants.

(Consolidated Appeals.)

Barrick, Poole & Olson, A. William Olson, Hill, Farrer & Burrill, Robert Nibley and J. Douglas Browne for Defendants and Appellants.

Gray & Maddox and Gary Cooper for Plaintiff and Respondent.

SHINN, P. J.—These are consolidated appeals of Harold J. Bissner and Edward D. Lownes from a judgment against them for the unpaid balance of the purchase price of real property and a trust deed note given as security for the same. The suit is not on the contract of purchase, as such, or the note, but upon a provision of the contract of sale by which defendants guaranteed faithful performance of the contract and payment of the purchase money note of $67,775. The judgment is upon this alleged guaranty.

July 8, 1954, Valinda Builders, Inc., a corporation, sold to Bissner and Lownes 17.68 acres of vacant land for $4,500 per acre. The scheme was the somewhat common one in which a subdivider pays the owner a part of the purchase price and gives a note and trust deed on the land for the balance, money is borrowed for development of the land and the construction of houses, and the seller's trust deed is subordinated to the security of the construction loans. Defendants later organized a corporation, "Trend Homes, Inc.," to take title, and Trend executed the note and trust deed to Valinda. The corporation had a paid-in capital of $200; defendants and their wives were the only stockholders, directors and officers. Money was borrowed, security for the loans was given by Trend, to which Valinda's trust deed was subordinated, houses were built upon the 53 lots of the subdivision and were sold. The money received was used in payment of claims having priority, and only $6,801.98 was paid as interest upon Valinda's note. No proceedings were had for sale of the property under Valinda's deed of trust and no action was brought to foreclose it.

The primary and, we believe, the decisive contention of defendants is that they were the purchasers of the property, the note and trust deed in question were given as part payment of the purchase price and that Valinda could not look beyond the security for payment of the debt. This contention, we think, must be sustained.

The note and trust deed were to be given by Bissner and Lownes but were given instead by Trend, which took title

and proceeded with the project as the owner. The contract of sale provided that defendants guaranteed performance of the contract of purchase and payment of the purchase money note and the ultimate question is whether this was a guarantee of the obligation of another, Trend, or merely a promise of defendants to pay what they already owed, and in no sense a contract of guaranty. If defendants, throughout, were the purchasers of the land, and if Trend was merely an instrumentality through which defendants operated, Valinda was limited by section 580b, Code of Civil Procedure, to application of the security to the debt, and the defendants had no personal liability.[1]

Resort must be had to the contract of sale to know the relationship of defendants to the enterprise. That they were the purchasers, and agreed personally to pay the purchase price, is not questioned. They made numerous promises, among which were the following: they were to provide drawings and estimates for lending institutions which would qualify for Veterans Administration and F.H.A. loans and obtain approval and commitments within 120 days; they were to deposit in escrow sufficient money to cover the cost of street improvements, adequate to obtain approval of the Real Estate Commissioner; they were to deposit $5,300 to be applied on the purchase of the land and their joint and several promissory notes and trust deed due in 15 months for $4,500 per acre for the exact ascertained acreage, the same to be subordinated to any construction loans obtained by defendants.

The agreement provided: ''Bissner and Lownes guarantee the full performance of the terms of this agreement and of said Note and Deed of Trust and agree to protect, indemnify and hold harmless Valinda of and from any claim, demands, liabilities or indebtedness whatsoever of any sort or nature by reason of this agreement or by reason of the construction of said houses on said property; and in particular covenant, guarantee and agree that the same will be kept free and clear of any mechanic's liens, materialmen's liens or any other liens caused by or arising out of any activity in connection with the construction on said property.'' Trend took title

---

[1] ''§ 580b. No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, or under a deed of trust, or mortgage, on a dwelling for not more than four families given to a lender to secure repayment of a loan which was in fact used to pay all or part of the purchase price of such dwelling occupied, entirely or in part, by the purchaser. . . .''

through the escrow and Valinda received $5,300 and the $67,775 note and trust deed.

The enterprise was a failure. Large sums were borrowed, to which the Valinda security was subordinated. Defendants advanced substantial sums. Proceeds from sales were applied upon debts having priority. Eventually, the outstanding contracts on the sales of lots were assigned by Trend to Valinda, as well as the capital stock of Trend. The amount of the agreed value of the contracts was applied upon accounts owing to Valinda; no money remained available for application on the note.

The agreement provided in part: "It is the intention of the parties that Bissner and Lownes, or a partnership or corporation through which they may decide to operate, will construct upon each and all of said lots as expeditiously as possible single family residences which will qualify for GI and/or FHA loans. . . ." It was also provided: "It is understood and agreed that any houses constructed by Bissner and Lownes, or the partnership or corporation through which they may decide to operate, on any of said lots shall be constructed in accordance with said plans and specifications as approved by Valinda," etc.; also "The sale of any and all of said houses shall be made by Bissner and Lownes, and/or any partnership or corporation through which they may operate," etc.

The agreement did not provide that a corporation would be formed to take title and give the note and trust deed or that the note of defendants for the balance of the purchase price would be assumed by a partnership or corporation. There was no agreement that if a corporation were formed to take title Bissner and Lownes would be released from their agreement to buy and pay for the property. Upon the contrary, their agreement was not that a corporation to be formed would promise to pay the balance of the purchase and that they, defendants, would guarantee payment of the promise of the corporation, but merely that in any event they, personally, would carry out the agreement and pay the purchase money.

Defendants argue that it is beyond question that they were, throughout, the purchasers of the land and that Trend was a mere instrumentality for their operations. The argument of plaintiff upon this phase of the case is that the court found that Bissner and Lownes were guarantors of performance of the agreement and that Trend was not the agent or instru-

mentality or *alter ego* of the individual defendants, and it is contended that these findings are conclusive upon appeal. We cannot agree.

There was no evidence that Trend was anything other than an instrumentality used by the individuals or that defendants were ever removed from their status and obligations of purchasers.

Section 2787 of the Civil Code defines a surety or guarantor as one who promises to answer for the debt, default or miscarriage of another, or hypothecates property as security therefor. The only debt in existence at the time of the contract was the promise of defendants to pay for the property. There was nothing in the agreement to suggest, nor is it contended that there was a plan that defendants would be supplanted as purchasers by any independent, responsible entity. Manifestly, the alleged guaranty of defendants was no more than a promise to pay their own debt, and the only other debt that became owing for the purchase price was the obligation of Trend, a mere shell of a corporation. Aside from the funds that were borrowed, defendants personally contributed the only funds that went into the venture.

The case does not differ in essence from others in which purchasers of real property conducted enterprises through others without losing their character of principals. In *Riddle* v. *Lushing*, 203 Cal.App.2d 831 [21 Cal.Rptr. 902], two defendants, as a partnership, purchased real property and as individuals guaranteed payment. In holding that the defendants were purchasers and not merely guarantors it was said: ''Since defendants were already primary obligors, both jointly and severally, they could not also be sureties or guarantors on the partnership note. The purported guaranty added nothing to the primary liability which arose when they as partners executed the note in the name of the partnership. As primary obligors they are entitled to the benefits and protection of said section 580b.''

In *In re Wilton-Maxfield Management Co.* (9th Cir. 1941) 117 F.2d 913, the purchase was made in the name of a dummy, one Honey, who gave his note and trust deed on the property in part payment of the purchase price. Wilton signed a guaranty of the note. It was said: ''Section 580b was not rendered inapplicable by the fact that Wilton, instead of signing the note as a maker, signed a guaranty thereof. For § 580b was designed, not merely to protect notemakers, but to protect purchasers of real property. Wilton, being such a purchaser, was entitled to the benefit of the section, despite

the fact that it (Wilton) guaranteed, instead of merely promising, payment of the balance of the purchase price."

■ It is thus settled beyond question that one who contracts to buy land does not alter his identity and relation as purchaser by a purported guaranty of performance of his own obligation to pay the purchase price. In the present case the court's conclusion that defendants Bissner and Lownes were guarantors of the purchase money debt and not principals was in error.

■ Defendants here were entitled to the protection of section 580b of the Code of Civil Procedure, and plaintiff could not look beyond the land for payment of the purchase price, unless defendants in some manner effectively waived any protection afforded them by that section. The court found: "As a part of the sale and purchase transaction between the Plaintiff and Trend: (a) The individual defendants jointly and severally guaranteed that Trend would pay the above-described purchase money promissory note and in so doing the individual defendants did not state and did not intend that their action would constitute a guarantee of their own individual obligations. (b) That said individual defendants' obligation of guaranty was made directly to the Plaintiff herein and was independent, collateral, separate and distinct from the obligations of Trend to the Plaintiff herein. (c) That the Plaintiff and the individual defendants undertook and agreed that the benefits of section 580b of the California Code of Civil Procedure would not accrue to the Defendant herein and that said individual defendants would not be privileged to defend any claim on said guaranty by Plaintiff upon the basis of said section 580b of the Code. (d) The individual defendants and the Plaintiff further agreed that in the event of a default and non-payment of said note by Trend that the Plaintiff should be privileged to sue the individual defendants directly without first proceeding against Trend; and Plaintiff in such event would be further privileged to maintain said action without first suing to foreclose Trend's interest in the second trust deed."

The plain meaning of these findings is that Bissner and Lownes agreed that they might be sued directly upon the debt without foreclosure upon the security pursuant to sections 725 et seq., Code of Civil Procedure, or sale of the security pursuant to the power of sale under the trust deed, and also agreed to waive their right to the limitation of their liability afforded by section 580b, Code of Civil Procedure.

These attempted waivers were in contravention of section 3513, Civil Code, which provides that "a law established for a public reason cannot be contravened by a private agreement."

Section 580b, which limits the liability of purchasers of real property to the value of the security, was enacted in the interests of the general public. (*Roseleaf Corp.* v. *Chierighino,* 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97]; *Brown* v. *Jensen,* 41 Cal.2d 193 [259 P.2d 425]; *Winklemen* v. *Sides,* 31 Cal.App.2d 387 [88 P.2d 147]; *California Bank* v. *Stimson,* 89 Cal.App.2d 552 [201 P.2d 39]; *Freedland* v. *Greco,* 45 Cal.2d 462 [289 P.2d 463]; *Riddle* v. *Lushing, supra,* 203 Cal.App.2d 831; *In re Wilton-Maxfield Management Co.* (9th Cir. 1941) *supra,* 117 F.2d 913; *Lucky Investments, Inc.* v. *Adams,* 183 Cal.App.2d 462 [7 Cal.Rptr. 57]; *Bargioni* v. *Hill,* 59 Cal.2d 121 [28 Cal.Rptr. 321, 378 P.2d 593].)

*Freedland* v. *Greco, supra,* 45 Cal.2d 462, was an appeal from a deficiency judgment after the sale of real property under a power of sale. In holding applicable section 580d which forbids a deficiency judgment after sale under a power of sale in a mortgage or trust deed the court said: "In *Brown* v. *Jensen, supra,* 41 Cal.2d 193, 197 [259 P.2d 425], we held: 'These provisions [Code Civ. Proc., §§ 580-580d, 726] indicate a considered course on the part of the Legislature to limit strictly the right to recover deficiency judgments, that is, to recover on the debt more than the value of the security.' Moreover, those provisions may not be waived in advance by the debtor as the courts have held with respect to section 726 of the Code of Civil Procedure (*Winklemen* v. *Sides,* 31 Cal.App.2d 387 [88 P.2d 147] and section 580a (*California Bank* v. *Stimson,* 89 Cal.App.2d 552 [201 P.2d 39]) and, see generally, *Salter* v. *Ulrich,* 22 Cal.2d 263 [138 P.2d 7, 146 A.L.R. 1344] and *Morello* v. *Metzenbaum,* 25 Cal.2d 494 [154 P.2d 670]. Because of the strong reasons of policy expressed in the *Winklemen* and *California Bank* cases the same rules should apply to section 580d. The section would have little effect if the prospective creditor could compel the prospective debtor to waive it in advance."

Plaintiff's reliance upon the findings that defendants waived all protection of section 580b must fail. The agreement, if made, was contrary to public policy, void and ineffectual for any purpose.

Our conclusion is that upon the facts alleged and proved no cause of action existed in favor of plaintiff against Bissner and Lownes for recovery of the unpaid balance of the note

and trust deed given by Trend as part payment of the purchase price of the property.

The judgment is reversed.

Ford, J., and Files, J., concurred.

A petition for a rehearing was denied November 5, 1964, and respondent's petition for a hearing by the Supreme Court was denied December 2, 1964. Peters, J., was of the opinion that the petition should be granted.