CARGILL, INC., Petitioner, Appellant,

v.

**Sam HEDGE and Hedge Farm, Inc., and Annette G. Hedge, intervenor, Respondents,**

**Don Stokke, Lyon County Sheriff, third-party defendant, Respondent.**

No. C2–84–445.

Supreme Court of Minnesota.

Oct. 25, 1985.

---

**478**

James R. Anderson, Marshall, for appellant.

Brian L. Boysen, Cecil Naatz, Marshall, for intervenor,

David W. Peterson, Marshall, for third-party defendant.

SIMONETT, Justice.

Do the owner-occupants of a farm, by placing their land in a family farm corporation, lose their homestead exemption from judgment creditors? The trial court and the court of appeals said no. We agree and affirm.

On October 24, 1973, defendant-respondent Sam Hedge and his wife Annette entered into a contract for deed for the purchase of a 160-acre farm. On March 1, 1974, the Hedges assigned their vendees' interest to Hedge Farm, Inc., a Minnesota corporation qualified as a family farm corporation under Minn. Stat. § 500.24, subd. 1(c) (1973), and took possession. Between 1976 and 1979, Sam Hedge purchased farm supplies and services on account from plaintiff-appellant Cargill, Inc., totaling about $17,000. Apparently not until 1980, however, after Cargill had started suit on the account, did it become aware of the Hedges' corporation. Eventually, pursuant to a confession of judgment, judgment was entered in favor of Cargill and against Sam Hedge and Hedge Farms, Inc., for $12,-707.08.

An execution sale was held on July 15, 1982, with Cargill as the successful bidder. Shortly before the 1-year redemption period expired, the district court, on motion of the judgment debtor, enjoined further proceedings on the execution, tolled the redemption period, and allowed Annette to join the proceedings as an intervenor. Subsequently, the trial court ruled that the Hedges had a right to exempt from the execution 80 acres constituting their homestead. The court of appeals affirmed, ruling that Annette Hedge, as sole shareholder of Hedge Farm, Inc., had an "equitable interest" in the corporate property, and that this interest, coupled with the Hedges' occupancy, satisfied the homestead statute. The court implied that it was willing to reach the same result by "piercing the corporate veil." *Cargill, Inc. v. Hedge*, 358 N.W.2d 490 (Minn.Ct.App.1984). We granted Cargill's petition for further review.

The right to a homestead exemption from execution is a constitutional right. Minn. Const. art 1, § 12. This right exempts from seizure or sale "[t]he house owned and occupied by the debtor as his dwelling place, together with the land upon which it is situated," Minn. Stat. § 510.01 (1984); in rural areas, 80 acres may be exempted, Minn. Stat. § 510.02 (1984). Clearly, a corporation, an artificial entity needing no dwelling, is not entitled to a homestead exemption. *E.g., Sugg v. Pollard*, 184 N.C. 494, 115 S.E. 153 (1922). If there is to be a homestead exemption here, it must be one personal to the Hedges, notwithstanding the existence of their corporation.

Annette Hedge is the sole stockholder of Hedge Farm, Inc. The court of appeals felt that this gave Annette an "equitable interest" in the property which, together with occupancy, constituted the kind of ownership which would allow the Hedges to assert a homestead exemption in the corporate property. But if Annette is the sole "owner" of the farm, there is no need to assert any homestead exemption because Annette is not a debtor. In any event, the "equitable interest" rationale seems to us conceptually ill-adapted to resolving the issue of creditors' rights we have here, especially since the relationship of a shareholder to a corporation is also implicated. We decline to adopt any equitable interest theory.

We do think, however, that the approach of a reverse pierce of the corporate veil may be used. In *Roepke v. Western National Mutual Insurance Co.*, 302 N.W.2d 350 (Minn.1981), we disregarded the corporate entity to further the purposes of the No-Fault Act. Although title to six motor

vehicles was in a corporation, in *Roepke* we nevertheless treated the vehicles as if they had been owned by the deceased, sole shareholder of the corporation, so that the decedent could be deemed an "insured" under the no-fault policy for the purpose of survivors' benefits. It seemed unfair to deprive the business owner of no-fault coverage he would have had if he had operated as a sole proprietorship. We stressed that the decedent had been president and sole stockholder of the corporation, that all six vehicles were used as family vehicles, and that no one in the family owned any other vehicles. Later, in *Kuennen v. Citizens Security Mutual Insurance Co.*, 330 N.W.2d 886 (Minn.1983), we made clear that policy reasons for a pierce do not alone justify disregarding the corporate entity. We refused a reverse pierce in *Kuennen*, where the decedent held only 51% of the stock and used only two of the four corporate vehicles for family use. Thus the degree of identity between the individual and his or her corporation, the extent to which the corporation is an alter ego, is important. Also important is whether others, such as a creditor or other shareholders, would be harmed by a pierce.

Here there is a close identity between the Hedges and their corporation. While the Hedges maintained some of the corporate formalities, such as keeping corporate minutes, filing corporate tax returns, and dealing with the Production Credit Association as a corporation, realistically, as the trial court found, they operated the farm as their own. They had no lease with the corporation and paid no rent. The farmhouse was their family home. Annette Hedge owned all the stock. Mr. and Mrs. Hedge and their daughters were the corporate directors with Sam Hedge as president, Patricia as vice-president, and Annette as secretary-treasurer. None of the officers received any salary. The corporation was as much an alter ego for the Hedges as Mr. Roepke's corporation was for him.

In this case, too, we have strong policy reasons for a reverse pierce, much stronger than in *Roepke*, namely, furtherance of the purpose of the homestead exemption. This state has long recognized the importance, notwithstanding the just demands of creditors, for a debtor's home to be a "sanctuary." *Denzer v. Prendergast*, 267 Minn. 212, 216, 126 N.W.2d 440, 443 (1964). This "wise and humane policy" is not just for the debtor's benefit, but is also "in the interest of the state, whose welfare and prosperity so largely depend upon the growth and cultivation among its citizens of feelings of personal independence, together with love of country and kindred—sentiments that find their deepest root and best nourishment where the home life is spent and enjoyed." *Ferguson v. Kumler*, 27 Minn. 156, 159, 6 N.W. 618, 619 (1880). The importance of protecting the homestead is further illustrated by recent laws imposing a moratorium on the foreclosure of certain mortgages and contracts for deed when the property involved qualifies for homestead tax treatment. Minn. Stat. ch. 583 (1984); 1984 Minn.Laws ch. 474. Significant, too, is that the legislature has given homestead classification for real estate tax purposes to homesteads held in family farm corporations where a shareholder occupies and actively farms the land. Minn.Stat. § 273.13, subd. 6a (1984).

In *Roepke*, in allowing a reverse pierce, we stated that "no shareholder or creditor would be adversely affected." *Roepke*, 302 N.W.2d at 353. Appellant argues that its creditor rights are adversely affected if the corporate entity is disregarded, but Cargill is no more adversely affected by the reverse pierce than the insurance company in *Roepke*. There is no claim that the rights of other shareholders are harmed; and as for creditors such as Cargill, if the Hedges, who live on the farm, are in reality its owners, any unfairness in allowing them the homestead exemption is merely inherent in the exemption itself. Creditors are deemed to extend credit in awareness that, should an individual debtor default, a homestead is exempt. Here, when Cargill extended credit, it was to Sam Hedge, and only after suit was filed did Cargill discover the existence of Hedge Farm, Inc.

**480**

One of the features of a corporation is limiting creditor liability to the corporate assets. We are aware of the danger of a debtor being able to raise or lower his corporate shield, depending on which position best protects his property. Consequently, a reverse pierce should be permitted in only the most carefully limited circumstances. This is such a case, and we so hold. Disregarding the entity Hedge Farm, Inc., we treat the Hedge farm as if owned by Sam and Annette Hedge as vendees under their contract for deed. As a co-vendee, Sam Hedge, the debtor, is entitled to claim a homestead exemption in 80 acres of his farm, and the creditors' execution sale of the exempted 80 acres is void.

Affirmed.

KELLEY, J., took no part in the consideration or decision of this case.