MILLER & SCHROEDER, INC., formerly Miller & Schroeder Financial Corporation, Respondent,

v.

A.T. GEARMAN, Appellant.

No. C6-87-561.

Court of Appeals of Minnesota.

Oct. 6, 1987.

Review Denied Dec. 13, 1987.

Larry M. Wertheim, Holmes & Graven, Minneapolis, for respondent.

Terry C. Smith, Oakdale, for appellant.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

Miller & Schroeder, Inc. (Miller) sued A.T. Gearman, the guarantor of a mortgage, to recover a deficiency arising out of foreclosure by advertisement. Gearman counterclaimed, alleging fraud on Miller's part. The trial court granted Miller's motion for summary judgment in the amount of $206,604.68 and awarded attorney fees. Gearman appeals. We affirm.

## FACTS

A.T. Gearman is a real estate entrepreneur. Twenty years ago he formed a corporation called Wheelock Enterprises, Inc. (Wheelock), ostensibly to hold title to real estate without the necessity of his wife's attendance at closings. Gearman is the sole shareholder, officer and director for Wheelock. No stock has ever been issued and the shareholders and directors do not meet. The corporation has no bank account and Gearman transfers cash and assets in and out of Wheelock's name at will. All cash generated by Wheelock's properties goes into Gearman's personal account. Wheelock is a subchapter S corporation for tax purposes so profits and losses are taxed to or deducted by Gearman individually. Wheelock has no employees and its only place of business is an office maintained by Gearman for himself. Gearman is always required to personally guarantee Wheelock's debts.

In 1983 Gearman owned property in Wheelock's name known as the Parkway Hotel (Hotel). Gearman planned to convert the Hotel to apartments and then sell them as condominiums but later decided to sell them as retirement homes. Miller told Gearman that public financing would provide more favorable rates than any private financing available and suggested it had the political connections to get the necessary approvals to implement the plan.

In January 1984, Miller loaned Wheelock $1,700,000 on the security of a mortgage on the Hotel and Gearman's personal guarantee. Miller received only Gearman's personal financial statement, including properties held in Wheelock's name. Gearman informed Miller that his use of Wheelock was for the convenience of his wife.

Miller was unable to get the public funding and Wheelock defaulted on the loan. Miller foreclosed by advertisement and purchased the Hotel for $1,575,000 at the sheriff's sale. After the sale, Miller commenced this action against Gearman, as guarantor, for a deficiency of $176,256.25, plus interest.

## ISSUES

1. Is appellant entitled to the protection of the antideficiency statute, Minn.Stat. § 580.23, subd. 1 (1984)?

2. Was respondent guilty of fraud?

3. Was summary judgment appropriate?

## ANALYSIS

### I

■ Minnesota's antideficiency statute provided:

> When lands have been sold in conformity with the preceding sections of this chapter the *mortgagor*, his personal representatives or assigns, within six months after such sale, except as otherwise provided in subdivision 2, may redeem such lands, as hereinafter provided, by paying the sum of money for which the same were sold, with interest from the time of sale at the rate provided to be paid on the mortgage debt and, if no rate be provided in the mortgage note, at the rate of six percent per annum, together with any further sums which may be payable pursuant to section 582.03. Where the redemption period is as provided in this subdivision the mortgagee, or his successors, assigns, or personal representative, or any other purchaser so purchasing at the sheriff's sale shall by purchasing the property at the sheriff's sale *thereby waive his right to a deficiency judgment against the mortgagor.*

Minn.Stat. § 580.23, subd. 1 (1984) (emphasis added). Gearman argues that he is, for all practical purposes, the mortgagor and thus Miller is not entitled to a deficiency judgment. Miller correctly argues that the statute clearly does not apply to a guarantor. *Victory Highway Village, Inc. v. Weaver,* 480 F.Supp. 71, (D.Minn.1979), aff'd, 634 F.2d 1099 (8th Cir.1980), involved the foreclosure of a mortgage by advertisement. The court concluded that:

> a mortgagee who uses the summary foreclosure proceeding contained in M.S.A. § 580.23, Subd. 1, waives any right to obtain a deficiency judgment

against the mortgagor, but is not precluded by § 580.23 from seeking a deficiency judgment against the guarantors. 480 F.Supp. at 74. Thus, the question presented is whether Gearman and Wheelock are the same entity so as to entitle Gearman to the protection of the antideficiency statute.

Gearman argues that when the guarantee is in reality executed by the primary obligor, the guarantor should come within the protection of the statute. In effect, Gearman asks the court to "reverse pierce the corporate veil" and find that Wheelock was his alter ego and merely an instrumentality.

*White v. Jorgenson,* 322 N.W.2d 607 (Minn.1982), lays out a two-pronged test for using an alter ego theory to find liability. The first prong focuses on the relationship of the shareholder to the corporation. Factors to be considered include:

> [I]nsufficient capitalization for purposes of corporate undertaking, failure to observe corporate formalities, nonpayment of dividends, insolvency of debtor corporation at time of transaction in question, siphoning of funds by dominant shareholder, nonfunctioning of other officers and directors, absence of corporate records, and existence of corporation as merely facade for individual dealings.

*Id.* at 608 (quoting *Victoria Elevator Co. v. Meriden Grain Co.,* 283 N.W.2d 509, 512 (Minn.1979)). Some of these factors apply to Wheelock.

■ However, there is a second, and more important prong to the test. In order to justify piercing the corporate veil the court must find "an element of injustice or fundamental unfairness." *Victoria Elevator Co.,* 283 N.W.2d at 512. Usually, this means that the corporation "has been operated as a constructive fraud or in an unjust manner." *West Concord Conservation Club, Inc. v. Chilson,* 306 N.W.2d 893, 898 n. 3 (Minn.1981). Common law fraud is not required. *Id.* Generally, one is piercing the corporate veil on behalf of a creditor dealing with the corporation because it is unfair or unjust not to. In a reverse pierce, this court must determine that it

was unfair and unjust not to pierce the corporate veil in order to provide Gearman with the protection of the antideficiency statute. We do not find such injustice here.

In *Cargill, Inc. v. Hedge*, 375 N.W.2d 477 (Minn.1985), the court stressed the limited application of a reverse pierce.

> We are aware of the danger of a debtor being able to raise or lower his corporate shield, depending upon which position best protects his property. *Consequently, a reverse pierce should be permitted in only the most carefully limited circumstances.*

*Id.* at 480 (emphasis added). In this case we have two established, experienced business parties involved in a commercial transaction. Gearman has acted through his corporation for over twenty years, held various properties through it, acquired title to the Hotel in 1980 and executed two mortgages through it, and enjoyed the benefits thereof. It is therefore neither unfair nor unjust to leave Gearman in a position where he must repay money he borrowed in order to carry on business activities.

## II

Gearman argues that Miller should not be allowed to collect the deficiency judgment because of fraud on Miller's part. Fraud must relate to a past or existing fact and cannot be based on statements of intentions or opinions. *Dollar Travel Agency, Inc. v. Northwest Airlines, Inc.*, 354 N.W.2d 880, 883 (Minn.Ct.App. 1984), *pet. for rev. denied* (Minn. Dec. 21, 1984). The record clearly shows that Miller agreed to use its best efforts in developing a financing program and was turned down by the City of Minneapolis because of the nature of the project. Miller's conduct does not support a fraud claim.

## III

Summary judgment may be granted only if there are no material issues of facts and one party is entitled to judgment as a matter of law. *See Ostendorf v. Kenyon*, 347 N.W.2d 834, 836 (Minn.Ct.App.1984). The burden of proof is on the moving party.

*Polk v. Mutual Service Life Insurance Co.*, 344 N.W.2d 427, 429 (Minn.Ct.App. 1984). The evidence will be reviewed in the light most favorable to the nonmoving party and doubts and inferences will be resolved against the movant. *Lindner v. Lund*, 352 N.W.2d 68, 70 (Minn.Ct.App. 1984).

The facts in this case with regard to the activities and representations in this case are not disputed. The parties disagree over whether the circumstance require piercing the corporate veil and a finding of fraud. Resolution of these disputes is a matter of law, not fact, and summary judgment is appropriate.

### Attorney Fees

Miller has requested attorney fees and the guaranty in this case specifically provided that the guarantor will pay the cost of collection, including attorney fees. The lower court set the attorney fees at $15,-425.90 and Miller requests an additional $5,000. We decline to award additional fees.

## DECISION

There is no injustice, unfairness or strong public policy reasons which would justify a reverse piercing of the corporate veil in this case. Fraud must be based on past or existing facts. Attorney fees are denied.

Affirmed.

WOZNIAK, Judge (dissenting).

I respectfully dissent.

A number of important facts are not clear from the majority opinion.

## I. ADDITIONAL FACTS

A. This appeal involves a separate lawsuit in which Miller sued to recover a deficiency judgment *after* it had foreclosed its mortgage by utilizing the foreclosure by advertisement statute.

Miller *elected* to foreclose by advertisement. It then chose to bid at the foreclosure sale substantially *less* than was owed under the mortgage. This created an

artificial deficiency of nearly $200,000 owed to Miller—an amount entirely within Miller's control. Gearman then redeemed.

Having chosen to create this large deficiency, Miller brought this separate deficiency action to recover from Gearman on his guaranty.

B. (1) Miller knew, prior to the execution of the mortgage and guaranty involved, that Gearman's sole reason for taking title to the property in the corporate form was to allow him to transact business regarding the property during his wife's absences. Gearman had conducted his business in this manner for this purpose for over 20 years.

(2) In making the loan, Miller relied solely on the credit of Gearman, not bothering to investigate the financial background of the imaginary "mortgagor," Wheelock. Miller never looked to the corporation's credit, but only to Gearman's. Gearman always treated Wheelock's assets as his own. This was reflected in his personal statement, which Miller received. Miller intended to, and did deal directly with Gearman. Miller had no interest in the form of the transaction, as long as Gearman was the borrower.

(3) Miller never requested financial information from the corporation; it did, however, request and receive information regarding Gearman's financial condition.

C. (1) Miller deliberately chose to foreclose by advertisement, rather than by action, in order to benefit from the many procedural advantages that method entails (shorter redemption period, avoidance of court proceedings, less expense, etc.). By its own choice, it made its foreclosure subject to the anti-deficiency statute.

(2) Miller unilaterally determined the amount of the artificial deficiency. Had Miller followed the customary practice of

bidding in at foreclosure the amount due on the mortgage, it would have been paid in full upon Gearman's subsequent redemption.

(3) Further, if Miller had foreclosed by action, it could have bid in below the amount due on the mortgage and protected its right to a deficiency judgment.

## II.

The alter ego (or instrumentality) theory for disregarding the corporate entity is set out in *White v. Jorgenson*, 322 N.W.2d 607, 608 (Minn.1982) (citing *Victoria Elevator Co. v. Meriden Grain Co.*, 283 N.W.2d 509, 512 (Minn.1979)). While the test is not an exact fit in a reverse pierce case [1], it identifies the relevant issues to be discussed. In a reverse pierce request such as this one, the shareholder is asking that the corporate entity be set aside so protections that are available to noncorporate entities or individuals would be available to the shareholder to avoid an injustice.

The test consists of two prongs: first, we must examine the relationship of the shareholder to the corporation, and determine whether the corporation has been operated as a mere instrumentality of the individual. Second, we are to examine the relationship and determine whether there is "an element of injustice or fundamental unfairness" if the corporate entity is not disregarded.

### (1) Relationship of shareholder to corporation.

The majority tacitly recognizes that the corporation was operated as a mere instrumentality for Gearman's personal business dealings. Gearman has enumerated the ways in which Wheelock Corporation merely is an instrumentality for his individual real estate dealings.[2] There is no clearer

---

1. Typically, an individual requests a pierce because the corporate structure has been used in an unjust manner or operated as a constructive fraud. The individual desires to pierce in order to hold the officers or shareholders personally liable. *West Concord Conservation Club*, 306 N.W.2d at 898.

2. He is, and always has been, the sole shareholder, officer and director.
No stock was ever issued.
There is no minute book and no corporate records.
The only minutes which exist are ones required by the other party to a particular transaction (such as the Written Action by Sole Director

identity between an individual and a corporation than exists between Gearman and Wheelock.

#### (2) Injustice or fundamental unfairness.

This factor is the real basis for the majority's denial of the protection of the statute to Gearman. Clearly, Wheelock is Gearman's alter ego, and Gearman is the mortgagor. Upholding the corporate form would unfairly deprive Gearman of the protection intended by the legislature; a reverse pierce is required in order to accomplish the public policy enunciated by the legislature.

It is significant on the question of fairness that the deficiency Miller seeks to collect is entirely of its own making. Miller could have protected itself from the imaginary loss it claims by bidding at a price that would have precluded a redemption for less than the amount due on the mortgage. Further, Miller could have protected its right to a deficiency judgment by foreclosing by action, a method specifically designed to provide such protection. In essence, this is an action brought to recover an artificial deficiency, the existence and amount of which was completely arbitrary with Miller, and it asserts a liability which is a direct result of the form it chose for the foreclosure. This is an indirect way to circumvent the legislative intent of the anti-deficiency statute.

In the Minnesota reverse pierce cases, although the interests of the creditors also were considered, the focus was upon the unfairness to the shareholders. *Roepke v. Western National Mutual Insurance Co.,* 302 N.W.2d 350 (Minn.1981); *Cargill,* 375 N.W.2d 477. Both *Roepke* and *Cargill* used a reverse pierce to correct an injustice.

Here, Gearman is in substance and in fact the mortgagor. It is unfair to Gearman to deprive him of the protection of the statute which he would otherwise enjoy when he is one of those whom the statute was designed to protect. The injustice is in depriving Gearman of the protection of this statute—protection he would enjoy if he operated as an individual businessman—because Gearman and his corporation are indistinguishable.

In *Cargill,* the court mentioned that the lender knew going into the transaction that it faced the protections which are granted to an individual borrower by the homestead law. *Cargill,* 375 N.W.2d at 479. Of course, it is preferable that a party know a risk beforehand; *Roepke* demonstrates that such foreknowledge is not a prerequisite in a reverse pierce case. It also is apparent that Miller was aware of the anti-deficiency statute, as it took such pains to attempt to avoid the effects of the protection it normally affords a mortgagor.

Gearman is the sole creditor, and any unfairness is in the statute itself. Clearly, a mortgage lender cannot assert a deficiency on the ground that it believes the anti-deficiency statute is unfair.

required by Miller in connection with its loan to Wheelock).

There were never any meetings of shareholders or directors.

The corporation has no bank account.

Its only assets are those that Gearman has chosen to hold in Wheelock's name.

If Gearman decides he would like Wheelock to hold cash or an asset, he puts it in Wheelock's name; and if he wants that cash or asset, he transfers it out of Wheelock's name.

Wheelock maintains no separate financial books or records.

Wheelock is a subchapter S corporation for tax purposes, so all its profits are taxed to, and all of its losses deducted by, Gearman individually. Wheelock files subchapter S tax returns as required by law.

All cash generated by properties in Wheelock's name goes into Gearman's personal account and is used by him as he sees fit.

Wheelock has never declared a dividend. Gearman takes all cash out of the corporation and deposits it in his personal account, but no formal transfer of any kind is needed, since it never goes into a corporate account.

Wheelock has no employees and pays no salaries.

Wheelock has no place of business except the office that Gearman maintains for himself.

Gearman does *not* use the corporation as a defense to personal liability because he is always required to personally guarantee its debts. He is always personally liable, anyway.

In this case, if the public policy of protecting mortgagors from deficiency judgments is accepted, as it must be, then it is manifestly unfair to deprive Gearman of that protection. Any unfairness to Miller simply is inherent in the statute itself.

The majority appears to accept the argument that the unfairness present in this case is the fact that Gearman was able to redeem the property for less than was due on the mortgage. It is difficult to understand this reasoning, as this is exactly the intended effect of the interaction between the foreclosure by advertisement and anti-deficiency statutes. That argument was explicitly rejected in *Cargill.* To determine interaction unfair is a judgment of the statutory scheme, not a rationale for denying Gearman's statutory protection. Nothing in the laws of Minnesota even remotely suggests that the anti-deficiency statute does not apply if the mortgagor redeems the property.

The majority merely states, without any discussion or reasoning, that Gearman should pay the remaining indebtedness which he agreed to pay. This conclusion disregards a strong public policy, enacted into law, which decrees that a mortgagee trades his right to a deficiency judgment in return for the shorter redemption period and other procedural and practical advantages of foreclosure by advertisement.

The majority also has emphasized that the prior statute's purpose was to protect only mortgagors, not guarantors. This view exalts form over substance. In the circumstances present here, the meaning of the statute is not expanded by protecting someone who is not a mortgagor; we merely recognize the substance of the transaction rather than the form or title the parties give it, and acknowledge that Gearman is a mortgagor.

Reliance is also placed on *Victory Highway Village v. Weaver,* 480 F.Supp. 71 (D.Minn.1979), *aff'd,* 634 F.2d 1099 (8th Cir. 1980). In *Victory Highway,* the court relied upon the definitional distinction that the guarantor and the mortgagor were separate entities. There was no claim that the mortgagor and guarantor were identical; the court did not even address the issue. Also, the mortgagor in *Victory* clearly was a viable business entity; in this case, Gearman forcefully shows that the corporation was formed merely as a conduit for his personal business transaction. In the present case, it is undisputed that the mortgagor and guarantor are not separate entities. Miller knew they were dealing with an individual who operated as a corporation. Miller requested Gearman's personal financial statement, not that of the company. Miller never relied on the corporate form for repayment of the debt. *Victory* thus is inapplicable to the factual situation before us.

### 3. Equity and public policy considerations.

The public policy considerations are compelling. The legislature expressed its abhorrence of deficiency judgments by adding the anti-deficiency language in Minn. Stat. § 580.23:

> Where the redemption period is as provided in this subdivision the mortgagee, or his successors, assigns, or personal representative, or any other purchaser so purchasing at the sheriff's sale *shall by purchasing the property at the sheriff's sale thereby waive his right to a deficiency judgment against the mortgagor.*

(Emphasis added.)

In 1986 the legislature again expressed itself, in the strongest possible terms, by prohibiting deficiency judgments altogether in foreclosures like this one. The result of the legislation is expressed in Minn.Stat. § 582.30, subd. 2 (1986):

> General prohibition for property with a six-month redemption period. A deficiency judgment is not allowed if a mortgage is foreclosed by advertisement under chapter 580, and has a redemption period of six months under section 580.23, subdivision 1.

*The new statute makes no distinction between mortgagors and guarantors.* The force of this expression of public policy is not diminished by the fact that the enactment took place shortly after the fore-

closure by Miller. The *Cargill* court found the enactment of homestead moratorium laws to be important expressions of policy, even though the laws were adopted two years after Cargill executed its judgment on Hedge's farm. *Cargill*, 375 N.W.2d at 479.

The California Rule.

In California, when the guarantor of the debt is the primary obligor of the corporation, the guarantor is treated as a mortgagor. In a similar case, the court found that individuals who purchased land and organized a corporation which took title to the land were within the protection of a statute which precluded deficiency judgments against purchasers. This was true despite the fact that the individuals executed a note and deed of trust, and were to hold the vendor harmless. The court found these individuals to be purchasers, in substance, and they were entitled to the protection of the statute. *Valinda Builders, Inc. v. Bissner*, 230 Cal.App.2d 106, 40 Cal.Rptr. 735 (1964).

In *Bissner*, the "guarantor" also was the primary obligor:

> [O]ne who contracts to buy land does not alter his identity and relation as purchaser by a purported guaranty of performance of his own obligation to pay the purchase price.

*Id.*, 230 Cal.App.2d at 111, 40 Cal.Rptr. at 738. Gearman, as the sole shareholder of the corporation, is the primary obligor of the debt.[3] Gearman also is the guarantor of his own obligation on the mortgage:

> In applying, under differing factual situations, the various statutes which make up the legislative scheme prohibiting deficiency judgments, California courts have recognized a distinction between true, independent contracts of guarantee and guarantees which were in reality executed by the primary obligor.

*Mariners Savings & Loan Assoc. v. Neil*, 22 Cal.App.3d 232, 234–35, 99 Cal.Rptr. 238, 240 (1971). The purported guaranty added nothing to the primary liability

which arose when Gearman, as sole director and shareholder of Wheelock, executed the note in the corporation's name. This is not a true, independent contract of guaranty. Gearman is entitled to protection under the anti-deficiency statute. The same public policy concerns supporting the anti-deficiency statute apply to Gearman's situation.

As this court recently noted in a related context, the "better law" in foreclosure proceedings does not favor allowing a deficiency for the full amount of the deficiency that results from the mortgagor purchasing the mortgaged property. *Gate City Federal Savings and Loan Assoc. v. O'Connor*, 410 N.W.2d 448, 451 (Minn.Ct. App.1987). This equitable observation applies to the situation Gearman finds himself in; the deficiency was artificially set by the mortgagor.

### III. CONCLUSION

Following the majority opinion's analysis would result in a situation where a mortgagee who has expressed absolutely no interest in holding the corporate mortgagor responsible for the mortgage would be allowed to foreclose and proceed directly against guarantor who is, in fact, the known alter ego of the corporation. Where the mortgagor is unconcerned with the ability of the mortgagor to make payments on the mortgage and is instead looking primarily to the alter ego guarantor of the corporate mortgagee for payment of the debt, it is unjust to deny that guarantor the type of protection afforded mortgagors under the anti-deficiency statute.

In the transaction giving rise to this lawsuit, Gearman clearly was the borrower. For purposes of the statute, he is the primary obligor and the person the statute was designed to protect. If the policy underlying the anti-deficiency statute is to be given effect, the corporate separateness of Wheelock must be disregarded.

---

**3.** There is little doubt that Miller could pierce the corporate veil to hold Gearman personally liable on the mortgage under an alter ego theory were it not for the anti-deficiency statute. Footnote one recites the numerous factors that would call for this result.

The Minnesota Supreme Court has cautioned that a determination of whether or not there are sufficient grounds for piercing the corporate veil should not normally be made by summary judgment because of the complexity of the relationship between the corporation and its shareholder. *Ahlm v. Rooney,* 274 Minn. 259, 265, 143 N.W.2d 65, 69 n. 1 (1966).

The guidelines of *Roepke* and *Cargill* show that a reverse pierce is mandated here. Gearman is entitled to summary judgment that Miller's action against him is barred. At the very least, bearing in mind the cautionary language of *Ahlm,* the issue should be sent back for trial so a full hearing can be had on the Wheelock/Gearman relationship.

I would reverse the trial court's entry of summary judgment on the issue of whether appellant is entitled to the protection of the anti-deficiency statute, and remand for consideration under the analysis above. Because of the disposition of this issue, I would also reverse the award of attorney fees.

I concur in the judgment dismissing the misrepresentation claim.