STATE BANK IN EDEN VALLEY, Appellant,

v.

EUERLE FARMS, INC., et al., Respondents.

STATE BANK IN EDEN VALLEY, et al., etc., Appellants,

v.

EUERLE FARMS, INC., et al., Respondents.

Gerald EUERLE, et al., Respondents,

v.

STATE BANK IN EDEN VALLEY, et al., Appellants.

No. C2–88–2284.

Court of Appeals of Minnesota.

May 30, 1989.

Review Denied July 27, 1989.

See also 861 F.2d 1089.

Robert M. Halvorson, Jeffry C. Braegelmann, New Ulm, for appellant.

John E. Mack, New London, for respondents.

Heard, considered and decided by PARKER, P.J., and RANDALL and KALITOWSKI, JJ.

## OPINION

PARKER, Judge.

The State Bank in Eden Valley (bank) and Production Credit Association (PCA) appeal an August 4, 1988, judgment, claiming the trial court erred in applying a reverse pierce of the corporate veil. Respondents Euerle Farms Inc., Gerald Euerle, Audrey Euerle and Dorothy Euerle filed a notice of review asserting the trial court erred in ruling that the 1986 real estate conveyances were fraudulent and that an April 6, 1988, $200,000 deficiency judgment should be reversed or vacated because the bank and PCA are estopped from asserting that the value of property repossessed in the replevin action was less than the value asserted in the replevin proceedings. We affirm in part and reverse in part.

## FACTS

Prior to 1975 Gerald and Audrey Euerle owned 80 acres of farm property which was their homestead. Gerald and his brother, William, also were record owners, as tenants in common, of 100 acres which was the homestead of William and Dorothy Euerle. Gerald and William farmed the 180 acres as a farm partnership.

William Euerle died in October 1975. Dorothy Euerle was appointed administratrix of his estate and in that capacity sold the real estate to Gerald in July 1976 for purposes of placing the farm land in a family farm corporation. In December 1976 Gerald formed Euerle Farms, Inc., and put the land obtained from Dorothy Euerle and the 80 acres he and Audrey owned into the farm corporation. Gerald issued 49 percent of the stock in Euerle Farms, Inc., to Dorothy Euerle in return for cash received from the distribution of William's estate together with a $60,000 promissory note. Gerald Euerle owned 51 percent of the stock in Euerle Farms, Inc.

Dorothy Euerle and Gerald and Audrey Euerle still occupy their family farm homes. They have also continued to farm the homesteads as they had before the transfer of the property to the farm corporation. They do not pay rent to Euerle Farms, Inc., for the use of their homes and have continued to receive homestead tax exemptions on the farm property after the creation of the farm corporation.

Prior to 1975, Gerald and William Euerle had various loans with the bank which were secured by chattel mortgages on livestock, grain and machinery. For a number of years until the early 1980s, the homesites were also mortgaged to the Federal Land Bank of St. Paul (FLB). In 1981 the FLB removed the mortgage from the Euerles' homesites.

After the incorporation of Euerle Farms, the bank dealt with the corporation in the same manner it had dealt with Gerald and William's partnership and required no mortgage on the land as collateral for loans. In 1984 Euerle Farms, by its president, Gerald Euerle, executed two promissory notes with the bank in exchange for loans totaling $290,000. In 1985 Euerle Farms obtained additional funds and executed a promissory note with the bank for $167,356.67. In January 1987 Euerle Farms also obtained additional funds and executed a promissory note with the bank for $21,147.10. The Euerles each personally guaranteed the corporation's debts, and Euerle Farms executed and delivered security agreements granting security interests in livestock, machinery, equipment, feed, crops and other assets to the bank. Throughout this time, neither the bank nor the PCA obtained a mortgage on the real property.

Euerle Farms defaulted on the promissory notes, and the Euerles defaulted on the guarantees. In May 1987 the bank (with PCA as a participant) commenced a replevin action against Euerle Farms and the Euerles to enforce its security interests

and to obtain a deficiency judgment. In May 1987 the bank obtained a replevin order enforcing its security interests.

In June 1987 PCA brought suit against Euerle Farms because of its default on outstanding loan obligations totaling $277,-712.59, plus accruing interest. PCA also asserted that Euerle Farms had fraudulently conveyed parcels of real estate containing the Euerles' homesites to Audrey and Gerald Euerle and Dorothy Euerle in April 1986, and sought to have the conveyances declared null and void and to obtain a lien on the property. The bank subsequently joined PCA in the action.

In July 1987 Euerle Farms filed a Chapter 12 bankruptcy petition for reorganization. By order dated September 24, 1987, the bankruptcy court dismissed the petition, finding that (1) Euerle Farms had acted in bad faith in conveying the 180 acres of unencumbered real estate to the Euerles; and (2) the income and expense projections presented by the farm corporation showed it was not realistic to believe that the corporation was capable of effectuating a reorganization plan. The plan for reorganization was denied.

In October 1987 Euerle Farms and the Euerles commenced a quiet-title action against the bank and PCA concerning the land at issue in the fraudulent conveyances action and seeking a declaration that the bank and PCA were not entitled to a deficiency judgment in the replevin action.

In March 1988 the trial court granted partial summary judgment, ruling that the 1986 conveyances of real estate from Euerle Farms to the individual Euerles were fraudulent. In April the court issued an order of clarification stating that the conveyances were fraudulent because (1) the corporation was insolvent at the time of the conveyances or would be rendered insolvent by the conveyances; and (2) the conveyances were made without fair consideration.

In March 1988 the parties reached a partial settlement of outstanding claims which was reduced to judgment on April 6, 1988. Judgment was entered against Euerle Farms, Inc., Gerald Euerle, Audrey Euerle and Dorothy Euerle in favor of the bank and PCA for the sum of $200,000 on condition that (1) neither the bank nor PCA make any claim for any additional sums due from those parties; (2) Euerle Farms and the Euerles retain their affirmative defense that the bank and PCA are bound by the collateral values stated in the bank's replevin complaint; (3) the bank and PCA not enforce the judgment until the remaining issues have been resolved; and (4) the parties proceed to trial on the Euerles' affirmative defense and the quiet-title action.

The quiet-title action proceeded to trial. By judgment entered August 4, 1988, the trial court found that the Euerles had used their homesites as an alter ego of Euerle Farms, and the court applied a reverse pierce of the corporate veil pursuant to *Cargill, Inc. v. Hedge,* 375 N.W.2d 477 (Minn.1985). The court ruled that Gerald and Audrey Euerle are entitled to a full homestead exemption for their 80–acre homesite, that Dorothy Euerle is entitled to a full homestead exemption for her 100–acre homesite, and that the homestead property is exempt from all claims of the bank and PCA.

In August 1988 Euerle Farms and the Euerles moved to amend the prior findings on the fraudulent conveyances determination. The bank and PCA also filed post-trial motions seeking reversal of the August 1988 judgment. The parties' motions were denied.

## ISSUES

1. Did the trial court err in applying a reverse pierce of the corporate veil pursuant to *Cargill, Inc. v. Hedge,* 375 N.W.2d 477 (Minn.1985)?

2. Did the trial court err in ruling that the real estate conveyances in April 1986 from Euerle Farms to Gerald and Audrey Euerle and Dorothy Euerle were fraudulent?

3. Did Euerle Farms and the Euerles waive their affirmative defense to the $200,000 judgment by failing to raise the defense at trial or in post-trial motions?

## DISCUSSION

### I

■ Both the bank and PCA claim the trial court failed to consider all relevant facts and erred in applying a reverse pierce of the corporate veil pursuant to *Cargill, Inc. v. Hedge*, 375 N.W.2d 477 (Minn.1985), to declare that the Euerles are entitled to homestead exemptions from execution. Because this presents a question of law, this court must determine whether the trial court properly interpreted and applied the law to the facts presented. *Associated Independent Dealers, Inc. v. Mutual Services Insurance Companies*, 304 Minn. 179, 183–84, 229 N.W.2d 516, 519 (1975).

In *Cargill v. Hedge*, Sam and Annette Hedge purchased a 160–acre farm by contract for deed. Shortly thereafter, they assigned their vendees' interest to Hedge Farm, Inc., a family farm corporation under Minn.Stat. § 500.24, subd. 1(c) (1973 Supp.), and took possession. Annette Hedge was the sole shareholder of Hedge Farm, Inc. Cargill subsequently obtained a judgment against Sam Hedge and Hedge Farm for unpaid farm supplies. Cargill executed on the judgment and was the successful bidder for the farm property at an execution sale. Before expiration of the redemption period, Annette Hedge intervened and the Hedges moved to enjoin the proceedings, seeking a declaration that they had a right to have 80 acres constituting their homestead exempt from execution. The trial court ruled that the Hedges were entitled to the 80–acre homestead exemption. This court affirmed on appeal. *Cargill v. Hedge*, 358 N.W.2d 490 (Minn.Ct. App.1984).

Upon review, the supreme court affirmed by applying a reverse pierce of the corporate veil to disregard the corporate entity. *Hedge*, 375 N.W.2d at 478–80. The supreme court found a close identity between the Hedges and the corporation and that although some of the corporate formalities were maintained (keeping corporate minutes, filing corporate returns, and dealing with PCA as a corporation), the farm was operated as the Hedges' own and the corporation was their alter ego. *Id.* at 479. The court further explained that when determining whether to apply a reverse pierce of the corporate veil, a court should examine (1) the degree of identity between the individual and his or her corporation and the extent to which the corporation is an alter ego, and (2) whether others, such as a creditor or other shareholders, would be harmed by a pierce. *Id.*

Furtherance of the homestead exemption is a strong policy reason for a reverse pierce of the corporate veil. *Id.* at 479. The important right to a homestead exempt from execution arises from the Minnesota Constitution and has long been recognized as important in providing a "sanctuary" for a debtor's home, notwithstanding the just demands of creditors. *Id.* at 478–79; *see also* Minn. Const. art. I, § 12; *Denzer v. Prendergast*, 267 Minn. 212, 216, 126 N.W. 2d 440, 443 (1964). The homestead exemption (defined in Minn.Stat. §§ 510.01–.02 (1986)) has long been recognized as a "wise and humane policy" which is in the best interest of the state. *Hedge*, 375 N.W.2d at 479 (citing *Ferguson v. Kumler*, 27 Minn. 156, 159, 6 N.W. 618, 619 (1880)). The supreme court noted it was significant that the legislature had given homestead classification for real estate tax purposes to homesteads held in farm corporations when a shareholder occupies and actively farms the land. *Id.* (citing to Minn.Stat. § 273.13, subd. 6a (1984)).

The trial court's findings here are not clearly erroneous and support a reverse pierce of the corporate veil to provide homestead exemptions to the Euerles. As in *Hedge*, there was a strong degree of identity between the Euerles and Euerle Farms; the farm corporation was an alter ego. After the incorporation, they continued to occupy and use their farm homes as their own and continued to receive real estate homestead tax exemptions on the property. The Euerles were the corporate officers and owned all corporate stock. They did not pay any rent to the farm corporation and, although they received salaries for the farming work they performed, they did not receive salaries as corporate officers.

The bank and PCA attempt to distinguish *Hedge* and stress the existence of Euerle Farms as an independent entity because of its relationship with the bank and PCA and because the promissory notes and security agreements were in the name of the farm corporation. However, the Hedges had also dealt with PCA as a corporation and observed other corporate formalities such as filing corporate tax returns and maintaining corporate minutes. Although more corporate formalities were followed in this case, there was still a strong degree of identity between the Euerles and the farm corporation; the Euerles each executed personal guarantees for all debt of the corporation.

The trial court's application of the reverse pierce does not result in inequitable harm to the bank and PCA. Those who extend credit must be aware that a homestead is exempt should there be a default. *Hedge*, 375 N.W.2d at 479. Any unfairness caused to creditors by the homestead exemption is inherent in the exemption itself. *Id.* The bank was put on notice of a potential 200 acres of homestead property within the corporation when Euerle Farms filed its 1977 financial statement, which identified 200 acres as homestead. This property had also been identified as homestead on the financial statements filed by the partnership in 1974 and 1975. Neither the bank nor PCA could justifiably rely on this property being available for execution to satisfy the corporation's debt. The property had been mortgaged to the FLB until 1981. After questions arose concerning the sufficiency of the collateral on the outstanding loans, the bank attempted to obtain a mortgage on this property, but the Euerles refused. The bank's attempt could be viewed as a tacit admission that it was aware the property would not be available for execution upon a judgment.

As the trial court noted, lenders may take available steps to protect their interest by requiring mortgages on homesteads as a condition of making loans. Although a reverse pierce is permitted only in the most carefully limited circumstances, it cannot be said that the trial court erred in this application of the doctrine.

## II

■ In April 1986 Euerle Farms quitclaimed the individual property homesites to Gerald and Audrey Euerle and Dorothy Euerle. The bank and PCA brought a fraudulent conveyance action against Euerle Farms. The Euerles, individually, commenced a quiet-title action, claiming the real estate at issue was owned individually by the Euerles and that the bank and PCA had no right, title, lien or interest against the property. Before the quiet-title action was resolved, the trial court granted the bank and PCA partial summary judgment, ruling that the real estate conveyances were fraudulent under Minn.Stat. § 513.23 (1986) (repealed by 1987 Minn.Laws ch. 19, § 12) because (1) Euerle Farms was not solvent at the time of the conveyances or would be rendered insolvent by the conveyances; and (2) the conveyances were made without fair consideration. Euerle Farms and the Euerles filed a notice of review, claiming the trial court erred in so ruling.

Resolution of the fraudulent conveyance action prior to a decision in the quiet-title action was premature; in light of the reverse pierce of the corporate veil in the August 1988 judgment awarding the Euerles homestead exemptions for the property at issue, it was error. Exempt property, such as homestead property, is not susceptible of fraudulent alienation, because creditors cannot be prejudiced by the disposition and cannot claim fraud. *Sisco v. Paulson*, 232 Minn. 250, 251, 45 N.W.2d 385, 387 (1950); *see also First National Bank of Cold Spring v. Jaeger*, 408 N.W.2d 667, 669 (Minn.Ct.App.1987). A conveyance of homestead exempt property cannot be set aside by creditors as fraudulent, even if the debtor who conveys the property intends to defraud his creditors. *See generally First National Bank of Mankato v. Wilson*, 234 Minn. 160, 163, 47 N.W.2d 764, 766 (1951). Because the right to sell and convey a homestead is absolute, the purpose of the transfer and the consideration paid are immaterial. *Id.*

The bank and PCA claim the bankruptcy court's ruling that the real estate conveyances were fraudulent is entitled to collat-

eral estoppel effect.[1] The collateral estoppel question is not properly before this court. The trial court did not reach or decide the issue. This court's review is limited to issues actually raised and decided by the trial court. *Thayer v. American Financial Advisers, Inc.*, 322 N.W.2d 599, 604 (Minn.1982); *In re Estate of Magnus*, 436 N.W.2d 821, 823 (Minn.Ct.App.1989).

The bankruptcy court's decision is not entitled to collateral estoppel effect, because that court's finding on the fraudulent conveyances was not necessary to the decision to reject the reorganization plan and to dismiss the Chapter 12 bankruptcy petition. *See Mickelson v. Rosenberg*, 291 Minn. 176, 182, 190 N.W.2d 82, 86 (1971) (a finding from a prior proceeding, which did not raise identical issues, cannot be given collateral estoppel effect if the finding was not necessary to the decision).

### III

◼ Euerle Farms and the Euerles claim the $200,000 deficiency judgment against them should be vacated because the bank and PCA should be estopped from claiming that the value of the property they obtained through replevin is less than the value they alleged in the replevin proceeding. This argument was raised as an affirmative defense and was reserved for trial pursuant to the stipulated April 1988 judgment. However, this issue was not raised at trial or in post-trial motions, was not ruled on by the trial court, and is therefore not properly before this court. *Thayer*, 322 N.W.2d at 604; *Fryhling v. Acrometal Products, Inc.*, 269 N.W.2d 744, 747 (Minn.1978). Furthermore, it is unreasonable to limit a creditor's recovery to the approximation of the current market value of property in replevin proceedings in today's age of wildly fluctuating agricultural land, crop, livestock and personal property values. The replevin statute requires only that a claimant make a good-faith approximation of the current market value of the

property and allows the trial court to modify the estimated current market value when it determines the amount of the bond. *See* Minn.Stat. §§ 565.23, subd. 1(f); 565.-25, subd. 3 (1986).

### DECISION

The trial court correctly applied a reverse pierce of the corporate veil, awarding Gerald and Audrey Euerle an 80–acre homestead exemption and Dorothy Euerle a 100–acre homestead exemption. Because this property is exempt from execution, the trial court's judgment ruling the 1986 real estate conveyances from Euerle Farms to the Euerles fraudulent is reversed. Respondents' affirmative defense alleging that the bank and PCA should be estopped from claiming that the value of the property obtained through replevin is less than the value alleged in the replevin proceedings was waived.

Affirmed in part and reversed in part.

---

1. Euerle Farms and the Euerles move to strike portions of the bank's and PCA's reply brief, claiming the collateral estoppel issue was not properly raised in the reply brief because it was not raised in appellants' statement of the case or initial brief and was not raised below. However, the bank and PCA were not required to raise the collateral estoppel issue in their original brief, because the fraudulent conveyances claim was not at issue until Euerle Farms and the Euerles raised that matter in their brief. The issue was raised below but was not addressed by the trial court. The motion to strike the reply brief is denied.