[L. A. No. 2967. Department Two.—February 26, 1913.]

## R. C. NELSON, Respondent, v. H. D. STEELE, W. E. BAXTER, and NELSON AXLE OILER COMPANY (a Corporation), Appellants.

LEASE OF RIGHT TO MANUFACTURE PATENTED DEVICE—RESCISSION FOR NONPAYMENT OF NET PROCEEDS.—Under a lease of the right to manufacture, sell, and control a patented device, which was entered into with the understanding that it should be assigned to a corporation to be formed by the lessees, and which provided that the latter should pay to the lessor fifty per cent of the "net proceeds" from said device and from said corporation, and that if the corporation should "not be on a paying basis within one year, the contract may be canceled at the option of any of the parties hereto, or may be extended under a new agreement, or upon a new basis," the lessor has the option to rescind the contract, after the expiration of the year, if no net proceeds were paid him during that period.

ID.—DELAY IN EXERCISING RIGHT OF RESCISSION—WANT OF KNOWLEDGE OF FACTS.—Where the lessor was not in a position to know the financial result of the operations of the corporation until after the expiration of the year, he did not lose his right to a cancellation of the contract by delaying for five weeks to exercise his option to rescind for nonpayment of net proceeds.

ID.—SUFFICIENCY OF NOTICE OF RESCISSION.—A written notice given by the lessor to the lessees, after the expiration of the year, which calls their attention to the fact that the contract has expired and become null and void, and that he will not continue, extend, or renew any contract with them, on account of their nonfulfillment of their part of the agreement, is a sufficient notice of rescission of the contract.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. Charles Monroe, Judge.

The facts are stated in the opinion of the court.

W. A. Alderson, for Appellants.

E. E. Hewlett, and Stuart M. Salisbury, for Respondent.

MELVIN, J.—This is an appeal taken from a judgment in favor of plaintiff and from an order denying the motion of defendants for a new trial.

The action was one whereby plaintiff sought to have canceled a certain contract by which he had leased to defendants Steele and Baxter, with the understanding that the said agreement should be assigned to a corporation to be formed by them, the right to manufacture, sell, and control a patented device upon which plaintiff owned the patent rights and known as "the Nelson axle oiler." This agreement provided that Nelson should advance no money; that the defendants should manufacture, sell, and control the patented article; and that they should pay plaintiff fifty per cent "of the net proceeds from said Nelson axle oiler and from said corporation." The contract contained a provision that a statement should be rendered. to Nelson by the manufacturer on the fifteenth day of each month. In the agreement was this paragraph: "That should this corporation not be on a paying basis within one year from date, this contract may be canceled at the option of any of the parties hereto, or may be extended under a new agreement, and upon a new basis." The date of this instrument was May 14, 1909. On June 22, 1910, plaintiff sent to defendants the following notice, dated May 15, 1910:

"Messrs. W. E. BAXTER, H. D. STEELE, Los Angeles, Calif.

"Gentlemen: In accordance with our contract relative to the Nelson axle oiler, which expired May 14, 1910, and now becomes null and void, I wish to advise and serve this notice, that I will not continue, extend or renew any contract with you, as you have not fulfilled your part as per agreement.

You must consider all obligations between us at a close. This as per our past agreement.

"Yours truly,

"(Signed)  R. Nelson."

The court found that the contract was duly executed; that it was duly assigned to the defendant corporation; that monthly statements were rendered to plaintiff at times alleged in the answer, but that said statements showed neither the net earnings nor the financial condition of said corporation; that defendants sold the right to manufacture and control the Nelson axle oiler in the territory known as Northern California for the sum of two thousand five hundred dollars, for which promissory notes were accepted, only five hundred dollars of which had been paid prior to May 15, 1910; "that in order to show the 'net gain' of $26.95 contained in defendants' exhibit No. 1, the defendants treated as cash on hand promissory notes amounting to $2000, which were not yet due. The said notes being the unpaid portion of the promissory notes for $2500 received for the sale of the right to manufacture, sell and control the said Nelson axle oiler in Northern California." The court also found that the notice of rescission quoted above was sent to defendants June 22, 1910, and as a conclusion of law announced that plaintiff was entitled to judgment canceling the contract in question, enjoining defendants and those claiming under them from using the Nelson axle oiler or in any manner dealing with it, and for costs, but that said judgment should be entered without prejudice to an action by any of the parties for an accounting.

Appellants' first point is that the matter of the existence or nonexistence of net gain for the year was one squarely in issue and that the court did not find thereon. There is no merit in this contention. The finding of the court which we have quoted *in haec verba* was equivalent to a finding that the business was not on a paying basis at the end of the first year. This finding was based upon a stipulation that the very facts found with reference to the method of figuring the "net gain," so-called, were true. The only important question therefor is whether or not these facts show that the concern was on a "paying basis" on May 14, 1910. Respondent insists that the expression means that there must have been "profits" or an excess of receipts over expenditures in order

that the concern might be said to be upon a paying basis, citing as instructive upon this point a number of cases, including *People* v. *San Francisco Savings Union*, 72 Cal. 200, [13 Pac. 498]. Appellants insist that the criterion of "profits" is too narrow, but that all "assets" including notes payable in the future must be set off against all liabilities in determining whether or not a corporation is on a "paying basis."

Appellants cite *Lowther* v. *Miller-Sibley Oil Co.*, 53 W. Va. 507, [97 Am. St. Rep. 1027, 44 S. E. 436], where the phrase "paying quantities" in an oil lease is construed to mean "paying quantities to the lessee," and a like definition in *Young* v. *Forest Oil Co.*, 194 Pa. St. 243, [45 Atl. 121], is approved. But that case does not meet the difficulty here presented. The matter there involved was the question when a right to an extension of the term of a certain oil lease vested, and it was properly determined that ordinarily the term "paying quantities" must refer to the amount that would properly compensate the exploring lessee for his outlay, rather than such sum as might be a reasonable return to the lessor upon his investment. We find no direct authority defining the expression "on a paying basis." None is needed, because the contract itself gives us a key to the meaning of the term as used by the parties. It provides for a payment of one-half of the "net proceeds from said Nelson axle oiler and from said corporation" to the plaintiff. It was clearly contemplated, therefore, that there should be net proceeds paid during the first year of the life of the contract, and it is equally clear that the option to rescind the agreement rested upon the failure to produce such net proceeds. Plaintiff was therefore in a position to rescind after May 14, 1910, and we do not think that he lost his right to a cancellation of the agreement because he did not exercise his option on or before that time. His position was not analogous to that of a lessee who may, under the provisions of a lease, terminate it at his option on or before a certain date, because in such a case the exact amount when his right expires is fixed by the terms of the lease; but the plaintiff could have no option until after May 14, 1910, and he could not know until he had received the information either from the books of the defendant corporation or from its monthly report, whether the year had been productive of gain or not. As the court found that the statements "did not

show the net earnings of the business," plaintiff was suffi-
ciently excused for the brief delay in demanding a cancella-
tion of the contract. We have discussed this matter upon
the theory that sale of "territory" is part of the profits of
the business. Respondent is of the opinion that such sale is
a parting with that which is equivalent to the capital of the
corporation. It is not necessary, however, to decide that ques-
tion, because the same result is obtained no matter what we
call such sales.

The notice of rescission was sufficient. Appellants suggest
that it treats the contract as null and void and does not pur-
port to give them any clew to Nelson's right arising out of the
failure of the corporation to be upon a paying basis. But
the notice does refer to the plaintiff's refusal to continue, ex-
tend, or renew the contract—rights which could only arise
under that part of the agreement defining the options which
would exist if the enterprise should not be on a paying basis
in its first year. This was sufficient to direct the attention
of appellants to the exact basis of plaintiff's claim.

The judgment and order are affirmed.

Henshaw, J., and Lorigan, J., concurred.