[Civ. No. 25013.    First Dist., Div. One.    Feb. 5, 1969.]

STEPHEN ROBERTS et al., Plaintiffs and Appellants, v. FRANK W. GRAVES, Defendant and Appellant.

William G. Corrigan and Bagshaw, Martinelli, Weissich & Jordan for Plaintiffs and Appellants.

Julius H. Selinger for Defendant and Respondent.

MOLINARI, P. J.—Defendant Frank W. Graves appeals from a judgment entered against him awarding to plaintiffs the sum of $16,500, a portion of a total balance of $31,406.86 remaining unpaid on a note secured by a trust deed. Plaintiffs Stephen and Agda Roberts cross-appeal from that portion of

the judgment which allows them only partial recovery on the note.[1]

Defendant contends on appeal that plaintiffs should be denied all recovery under the terms of Code of Civil Procedure section 580b[2] which disallows deficiency judgments where security has been given to secure the purchase price of real property. Plaintiffs claim that section 580b does not apply because defendant was merely a guarantor of the note and therefore not protected by the statute.

Defendant, an experienced developer of real estate projects, signed a deposit receipt by which he agreed to purchase a parcel of land in Novato, California, from plaintiffs. According to the terms of this agreement, which was signed on October 6, 1964, the purchase price of the land was $43,000 and defendant was to pay $10,000 cash and execute a note for $33,000 secured by a deed of trust on the land. The deed of trust was to become a second deed of trust by virtue of subordination to construction loans. On or about October 29, 1964, defendant formed a corporation known as "Meadowbrook Developers, Inc." (sometimes hereinafter referred to as "Meadowbrook") but no corporate stock was issued. The note in the amount of $33,000 payable to plaintiffs was executed on March 12, 1965 and bears the signature "Meadowbrook Developers, Inc. By: Frank W. Graves By: Harry D. Schad" and the signature "Frank W. Graves" over the typewritten designation "Frank W. Graves, individually as a Co-Guarantor."

There is direct conflict in the evidence as to the purpose of defendant's individual signature on the note. According to his own direct testimony, defendant signed in this form because he felt "that the deposit receipt required me to sign it individually, because I contracted to buy it individually, and the fact I decided to take it in the corporate name didn't relieve me of signing it personally." He further testified that he signed the note in the form prepared by the title company in confidence that the company knew what it was doing in preparing the note in that form. He stated that he did not recall at whose direction he was required to sign as co-guarantor and testified that he did not know the source of the particular terminology used below the signature.

---

[1] The actual amount of the note was $33,000, but some portion of it had been paid.

[2] Unless otherwise indicated, all statutory references are to the Code of Civil Procedure.

On the other hand, there was evidence indicating that the individual signature was placed on the note in order to make it acceptable collateral for a loan made to plaintiffs by the Crocker-Citizens National Bank (hereinafter referred to as "the bank"). Mr. John Oldfin, who was assistant vice-president of the San Rafael branch of the bank at the time of the transactions in question, testified that after reviewing the financial statements of Meadowbrook he concluded that the signature of the corporation alone would be insufficient to make the note proper collateral for a loan which plaintiffs had requested from the bank. Oldfin testified that the note of the corporation would have been unacceptable as security because the company's debt to net worth ratio was considerable. Consequently he decided that a guarantor was necessary for the protection of plaintiffs. Oldfin further testified that defendant called him at the bank and said that statements concerning his personal worth could be obtained from the Terra Linda branch of the bank. After reviewing these statements which showed a high net worth, and after defendant signed the note, $16,500 was loaned to plaintiffs and the note and deed of trust were assigned to the bank as collateral. The loan to plaintiffs was for the purpose of clearing a mortgage on the lots prior to selling them. Defendant testified that he had no knowledge that plaintiffs had to borrow money in order to close the transaction and said that he never talked to Oldfin and that he was never told that the Meadowbrook signature would be insufficient.

On March 12, 1965, the escrow was closed, and subsequently, after the construction work was accomplished, the first deed of trust was foreclosed and the property was sold at a foreclosure sale. As a result the security for the note in question in this case became worthless with a balance of $31,406.86 remaining unpaid. The bank demanded repayment of the loan to plaintiffs which was secured by the subject note. A substitution of security (a mortgage on plaintiffs' home) was negotiated and thereupon the subject note was reassigned to plaintiffs by the bank. Plaintiffs subsequently brought the instant action for its payment.

The trial court made the following findings pertinent to the issues on this appeal: that, although the original agreement to purchase the land was signed by defendant, this intended purchase was converted into a purchase by Meadowbrook; that Meadowbrook became indebted to plaintiffs for a portion of the purchase price in the sum of $33,000 as evidenced by a promissory note in that amount secured by a subordinated

deed of trust; that the signature of defendant "individually as a Co-Guarantor" was not placed on the note by inadvertence but was intended to be the individual obligation of defendant "over and above and in addition to the corporate obligation"; that defendant knew his individual guarantee was required by the bank for the purpose of adding his individual security to that of the corporation in order to make said note acceptable to the bank as collateral security for a loan to plaintiffs; that defendant intended· his separate endorsement as an inducement for the bank to accept the note as security for the $16,500 loan to plaintiffs; and that, although the guarantee given by defendant as an individual appears on its face to cover the entire note, it was the purpose of the parties to only provide security for plaintiffs' obligation to the bank in the sum of $16,500, together with interest and attorney fees. .

Based on the foregoing findings the court concluded that section 580b did not constitute a defense to the obligation to the extent of the $16,500 loan made to plaintiffs; that defendant entered into a collateral, separate and distinct obligation "given independently of the initial purchase price obligation"; and that the guarantor's obligation was not the obligation of the original detor, Meadowbrook Developers, Inc. Therefore, the court adjudged that plaintiffs receive $16,500 with interest and the sum of $2,000 in attorney fees.

■■■■ Defendant's primary contention is that he rather than Meadowbrook was the purchaser of the land and that, therefore, he was promising only to pay his own debt and was consequently protected by the provisions of section 580b. That section forbids deficiency judgments in purchase money security transactions.[3] (See *Brown* v. *Jensen,* 41 Cal.2d 193, 195-196 [259 P.2d 425]; *Younker* v. *Reseda Manor,* 255 Cal.App. 2d 431, 438 [63 Cal.Rptr. 197]; *Kistler* v. *Vasi* * (Cal.App) 73 Cal.Rptr. 310.)

Before proceeding to a consideration of defendant's crucial contention, we should first note that there is a basic discrepancy between the findings of fact and conclusions of law propounded by the trial court in this regard. First the court

. [3]Code of Civil Procedure section 580b provides in pertinent part: "No deficiency judgment shall lie in any event after any sale of real property for failure of the purchaser to complete his contract of sale, or under a deed of trust, or mortgage, given to the vendor to secure payment of the balance of the purchase price of real property, . . ."

*A hearing was granted by the Supreme Court on January 15, 1969. The opinion of that court is reported in 71 Cal.2d —— [78 Cal.Rptr. 170, 455 P.2d 106].

seems to find that the purchese was made by Meadowbrook rather than by defendant and then the court concludes that defendant was not protected by section 580b to the extent of $16,500. Yet it would seem that if defendant was in any way, partially or otherwise, protected by the applicable section, he would be *totally* protected. ■ This is true because it is against public policy to waive any part of the protection of the section *if* it does apply. (See *Valinda Builders, Inc.* v. *Bissner,* 230 Cal.App.2d 106, 112 [40 Cal.Rptr. 735]; *Freedland* v. *Greco,* 45 Cal.2d 462 467 [289 P.2d 463].) Accordingly, section 580b either applies or does not apply to shield defendant in this case.

We also note, preliminarily, that in the instant case extrinsic evidence was admitted without objection. Both parties sought to explain the meaning of defendant's individual signature on the note, and since the language "individually as a Co-Guarantor" is fairly susceptible of either one of the two interpretations contended for, extrinsic evidence to prove either of such meanings was admissible. (See *Pacific Gas & Elec. Co.* v. *G. W. Thomas Drayage & Rigging Co.* 69 Cal.2d 33, 37 [69 Cal.Rptr. 561, 442 P.2d 641]; *Delta Dynamics, Inc.* v. *Arioto,* 69 Cal.2d 525, 528 [72 Cal.Rptr. 785, 446 P.2d 785]. ■ Accordingly, where extrinsic evidence has been received in a proper case and the extrinsic evidence is in such conflict that conflicting inferences may be drawn, the appellate court will accept or adhere to the interpretation adopted by the trial court. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865-866, see fn. 2, at p. 866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].) Moreover, parol evidence admitted without objection may be considered on appeal in ascertaining whether inferences can be drawn from the written agreement and the surrounding circumstances to support a trial court's finding relative to the intention of the contracting parties. (*Santa Clara Properties Co.* v. *R.L.C., Inc.,* 217 Cal.App.2d 840, 849-850 [32 Cal.Rptr. 333]; see *Pao Ch'en Lee* v. *Gregoriou,* 50 Cal.2d 502, 505-506 [326 P.2d 135]; *Greenblatt* v. *State Board of Equalization,* 148 Cal.App.2d 619, 625 [307 P.2d 379].)

■ Adverting to the question presented, we are satisfied that under the law of this state a person who is actually a guarantor of a purchase money transaction in which another individual or legal entity is primarily liable is not protected by the provisions of section 580b. (See *Heckes* v. *Sapp,* 229 Cal.App.2d 549, 552-553 [40 Cal.Rptr. 485]; *Jonathan Manor,*

*Inc.* v. *Artisan, Inc.,* 247 Cal.App.2d 651, 654 [56 Cal.Rptr. 14] ; and see *Hatch* v. *Security-First Nat. Bank,* 19 Cal.2d 254, 260-262 [120 P.2d 869] ; but see *Union Bank* v. *Dorn,* 254 Cal.App.2d 157, 159 [61 Cal.Rptr. 893] where the reviewing court indicated that the question of the protection of a guarantor was not entirely settled.) We are, moreover, particularly persuaded by the analogy and the rationale of the cases which hold that an "endorser" is not protected by section 580b and the holding in those cases that the only person coming within the protection of the section is the principal debtor. (See *Lange* v. *Aver,* 241 Cal.App.2d 793, 797-798 [50 Cal.Rptr. 847] ; *Engelman* v. *Gordon,* 242 Cal.App.2d 510, 518-519 [51 Cal.Rptr. 627] ; *Stephenson* v. *Lawn,* 155 Cal.App.2d 669, 671 [318 P.2d 132].)

In *Heckes, supra,* a corporation purchased real property and executed a promissory note therefor. The defendants, who were sole shareholders of the company, signed the note as individual guarantors. After default, the sellers brought suit on the guarantee of the note and the guarantors claimed the protection of section 580b. In holding that the guarantors' obligation was not protected against a deficiency judgment the appellate court, after noting recent Supreme Court cases setting forth the purpose of section 580b (*Roseleaf Corp.* v. *Chierighino,* 59 Cal.2d 35 [27 Cal.Rptr. 873, 378 P.2d 97] ; *Bargioni* v. *Hill,* 59 Cal.2d 121 [28 Cal.Rptr. 321, 378 P.2d 593]), stated that the scope of the protection afforded by that section must be confined to the purchaser-debtor's obligation which is secured by the purchased property and specifically noted that a guarantor's obligation is not secured by the purchased property and is not the debtor's obligation. (229 Cal. App.2d 549, 552-553.)[4]

In view of the foregoing authorities, our immediate inquiry is whether or not defendant in this case was a guarantor of the debt of Meadowbrook. As already indicated, this determination is a factual one. Accordingly, upon a conflict in the evidence the trial court concluded that the initial primary liability of defendant as evidenced by the deposit receipt was converted to a liability of the corporation at the time the note and deed of trust were signed. The court also found on the

---

[4]One writer suggests that *Roseleaf Corp.* v. *Chierighino, supra,* 59 Cal.2d 35, automatically eliminates the guarantor from the protection of Code of Civil Procedure section 580b. (See Hetland, *Deficiency Judgment Limitations in California—A New Judicial Approach* (1963) 51 Cal.L.Rev. 1, 27. See also Note (1962) 15 Stan.L.Rev. 121 for a different view.)

basis of conflicting evidence that defendant was a guarantor of the note to the extent of the sum of $16,500, and not the purchaser of the property to that extent. Since the trial court chose to believe the testimony of Oldfin who provided substantial evidence of the guarantee by defendant, the finding of the trial court will not be disturbed on appeal.[5] The trial court was therefore justified in inferring that when defendant signed the note ''individually as a Co-Guarantor'' he intended that his signature would create an independent obligation with respect to the debt which was represented by the note.

The conclusion reached by us compels the determination that since defendant was a guarantor he was not protected at all by section 580b and that, therefore, it is of no moment, insofar as the application of that section is concerned, whether the guarantee is a total or a partial one. However, although the guaranty appears on the face of the note to run to the entire obligation, the trial court in the light of the conflicting extrinsic evidence adduced was entitled to draw the inference and conclusion that plaintiffs and defendant intended that defendant would only undertake to guarantee the note to the extent of plaintiffs' obligation to the bank in the sum of $16,500.

In arguing the application of section 580b defendant relies, to a large extent, on the case of *Valinda Builders, Inc.* v. *Bissner, supra,* 230 Cal.App.2d 106. In that case the suit was on a provision of the contract of sale wherein the defendants guaranteed faithful performance of the contract and payment of the purchase money note. The sale was made to the defendants individually, but the note and trust deed on the land were executed by ''Trend,'' a corporation formed by the defendants with a paid-in capital of $200, and title to the land was taken by the corporation. The reviewing court held that the defendants were the purchasers of the land, that Trend was merely an instrumentality for their operations,

---

[5]Defendant urges that Oldfin's testimony was admitted for a limited purpose and that much of his testimony was retracted. Although there was some confusion as to whether Oldfin received financial statements before the close of escrow, Oldfin did not actually retract any of his testimony which we have set out in this opinion. The assertion that Oldfin's testimony was admitted for a limited purpose is not substantiated by the record which discloses that the only testimony received for a limited purpose was Oldfin's testimony as to a conversation with a Mr. White, a real estate broker representing plaintiffs, which conversation, while ruled to be hearsay, was admitted not for the truth of the statements, but merely ''for the purpose of showing the act.''

and that, accordingly, the defendants were entitled to the protection of section 580b. In reaching this conclusion the appellate court noted that ''There was no evidence that Trend was anything other than an instrumentality used by the individuals or that defendants were ever removed from their status and obligations of purchasers.'' (P. 110.)

*Valinda* is distinguishable from the instant case. In *Valinda* the reviewing court was called upon to interpret the language of the contract of sale and it was not confronted with extrinsic evidence showing any intent of the parties except as expressed in that contract. Here, on the basis of extrinsic evidence which finds substance in the record, the trial court found that the obligation under the contract of sale was modified from a personal to a corporate one by the consent and agreement of the parties and that defendant was thus removed from his status and obligation as a purchaser. The same distinction is applicable to *In re Wilton-Maxfield Management Co.,* 117 F.2d 913, a federal bankruptcy case which applies section 580b and upon which defendant also places strong reliance. There the company defendant signed a guarantee of a note and had the property conveyed to a ''dummy'' who had no real interest in it. The company was held to be the actual purchaser of the property and thereby protected by section 580b. (See also *Riddle* v. *Lushing,* 203 Cal.App.2d 831 [21 Cal.Rptr. 902].)

Defendant further contends that the trial court erred in refusing to make findings upon the affirmative defenses raised in his answer and in refusing to make certain requested special findings. As to the requested specific findings with respect to which defendant was primarily liable and whether Meadowbrook was his *alter ego,* the findings made by the court that Meadowbrook was the purchaser of the property, that it became indebted to plaintiffs for the purchase price, and that defendant's subject signature was intended to be the individual obligation of defendant over and above, and in addition to, that of the corporation, negate any *alter ego* theory and implicitly negate any finding of primary liability on the part of defendant. Accordingly, the findings made by the court were equivalent to a finding that defendant was not primarily liable to plaintiffs and that he was not the *alter ego* of Meadowbrook. (See *Nelson* v. *Steele,* 165 Cal. 15, 17 [130 P. 886] ; *Pry Corp. of America v. Leach,* 177 Cal.App.2d 632, 636 [2 Cal.Rptr. 425].) Further, it is apparent from the express findings made by the court that if the specific findings

requested by defendant had been made they would have been adverse to defendant. Therefore, he cannot complain of the failure of the trial court to make the requested findings. (See *Pry Corp. of America* v. *Leach, supra,* at p. 637; *Goldberg* v. *Paramount Oil Co.,* 143 Cal.App.2d 215, 224 [300 P.2d 329].) The other findings requested by defendant call for evidentiary findings which the court was not required to make. (See *Dunlap* v. *Marine,* 242 Cal.App.2d 162, 168 [51 Cal.Rptr. 158]; *De Vrahnos* v. *George,* 203 Cal.App.2d 210, 221 [21 Cal.Rptr. 481].)

In conclusion we note that the trial court erroneously concluded that section 580b did not constitute a defense to the obligation to the extent of the $16,500 loan to defendant and thereby implied that as to the balance of the note in the sum of $14,906.86 remaining unpaid, section 580b did constitute a defense to such obligation. Actually the trial court should have concluded from the findings of fact that section 580b did not protect defendant at all, but rather that his liability was limited to the extent of the $16,500 loan by virtue of the agreement of the parties. However, since the findings of fact support conclusions necessary to the judgment, the absence or omission of the proper specific conclusion will not avail to defeat the judgment. (*D'Andrea* v. *Pringle,* 243 Cal.App.2d 689, 697 [52 Cal.Rptr. 606]; *Takekawa* v. *Hole,* 170 Cal. 323, 325 [149 P. 593]; *Prothero* v. *Superior Court,* 196 Cal. 439, 443 [238 P. 357].)

The judgment is affirmed.

Sims, J., and Elkington, J., concurred.