Filed 5/6/14  Wells Fargo Bank Nat. Assn. v. Mirrafati CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WELLS FARGO BANK NATIONAL ASSOCIATION,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DAVID J. MIRRAFATI et al.,<br><br>    Defendants and Appellants. | G048297<br><br>(Super. Ct. No. 30-2010-00424295)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer and Linda S. Marks, Judges.  Affirmed.

Martin E. Jacobs and Martin E. Jacobs for Defendants and Appellants.

Barton, Klugman & Oetting and Robert Louis Fisher for Plaintiff and Respondent.

\*         \*         \*

A jury awarded plaintiff and respondent Wells Fargo Bank National Association the sum of just under $840,000 against defendants and appellants David J. Mirrafati and Alta Mira Investments, Inc. (Investments) based on five guaranties executed by defendants.  Prior to the jury trial, the trial judge tried the case on stipulated facts (Stipulated Facts) and evidence (Stipulated Documents), finding defendants liable on the guaranties, their defenses "unavailing," and deciding the only remaining issue was the amount due.  In a separate trial the jury determined the amount of damages.

On appeal, defendants contend there are disputed factual issues that should have been tried to a jury as to whether:  defendants are liable on the guaranties; the anti-deficiency and one form of action rules bar plaintiff from recovering on the guaranties; plaintiff gave consideration for the guaranties; and the amount of damages should be offset on a theory of promissory estoppel.  Finally, defendants maintain their affirmative defenses should not have been decided in the bench trial.

First, promissory estoppel was tried and there is sufficient evidence to support the jury's decision in favor of plaintiff.  As to the other defenses specifically addressed in their briefs, defendants did not overcome the stipulated facts and evidence.  Finally, defendants did not adequately address the remaining affirmative defenses and claims as to them are forfeited.  Therefore, we affirm the judgment.

## FACTS AND PROCEDURAL HISTORY

According to the Stipulated Facts, there were a series of 24 real estate loan transactions between Mirrafati and the Bank of Orange Division of Placer Sierra Bank (Bank of Orange) in 2006 and 2007.  Five of the loans (Loans) are the subject of this appeal.  Each of the Loans was evidenced by a promissory note (collectively Notes) secured by real property (Parcels).  At some time after the Loans were made, Mirrafati transferred title to each of the Parcels to either Alta Mira Exchange, LLC (Exchange) or Alta Mira Properties, LLC (Properties).  Mirrafati is the president of Investments and the managing member of Properties and Exchange.

2

In September 2007 plaintiff acquired the assets of Bank of Orange, including the Notes and trust deeds (Trust Deeds) evidencing the Loans, by way of merger. Thereafter, plaintiff, Properties, and Exchange entered into modification agreements (Modification Agreements) whereby Exchange and Properties agreed to assume the indebtedness evidenced by the Notes for the respective Parcels Mirrafati had deeded to them; Mirrafati was released from liability on the Notes. Contemporaneously or near the time of the effective date of the Modification Agreements, defendants each executed guaranties (Guaranties) of the Loans owed by Exchange and Properties to plaintiff.

In October 2009, Properties and Exchange defaulted on the five Notes. Notices of default and elections to sell and thereafter notices of sale were recorded. The trustee under the Trust Deeds conducted foreclosure sales of each of the Parcels.

Plaintiff then sued defendants on the Guaranties, seeking the balance due on each of the Notes. Defendants raised 31 affirmative defenses.

Thereafter the parties entered into the Stipulated Facts, which contained the facts set out above, among others, and the Stipulated Documents. In the Stipulated Facts the parties agreed the facts set out therein were "correct and accurate and that each fact may be admitted in evidence in any trial or other proceeding . . . in the matter." "This Stipulation is without prejudice to the defenses, including affirmative defenses, of the defendants." The Stipulation of Facts also states: "The foregoing are the undisputed facts in this case. This . . . Stipulation is without prejudice to any party asserting that there are other disputed facts."

The parties then agreed to conduct a bench trial on the stipulated facts and documents. The Order Regarding Trial of Uncontested Facts to the Trial Court states: "The Court shall determine all issues which can be determined on the agreed facts and documents and determine whether there are any triable issues of material fact which

3

remain unresolved. [¶] . . . Discovery may be conducted after the Court rules on the issues which can be decided on the agreed facts and documents, if any."

There was a trial on the facts set out in the Stipulated Facts and the evidence listed in the Stipulated Documents, as well as briefs and arguments by counsel for both parties. After taking the matter under submission the court ruled plaintiff had the right to enforce the Guaranties. Defendants' "various defenses" were "unavailing." Because "plaintiff acknowledge[d] that the amount due on these notes is not beyond dispute" and its evidence of the amount was contained in documents not included in the Stipulated Documents, the court could not enter judgment.

In preparation for the jury trial, the parties agreed to a joint List of Controverted Issues, of which there were 10. Five were to determine the amount due on the Loans. The other five, inserted at defendants' request, asked the jury to set out plaintiff's damages with respect to each Loan.

During the jury trial, Mirrafati testified he was current on the Loans and plaintiff had promised him it would extend the due date on the Loans so long as he made his monthly payments. Additionally Mirrafati testified he built a duplex on one of the Parcels using his own funds and built another unit on another Parcel, for which plaintiff loaned less than half of the cost and released only half of what was loaned.

Plaintiff submitted a list of its requested jury instructions, to which defendants raised no objection. Defendants asked only that the court give CACI No. 358 on mitigation of damages. Plaintiff argued it was improper given the waiver of arguments as to mitigation contained in the Guaranties but its objection was overruled.

In closing argument defendants' lawyer argued Mirrafati maintained his payments on the Loans current. He also claimed there were certain back-dated documents concerning the corporate authorizations to borrow. He argued plaintiff had not met its burden to prove damages.

4

The verdict form was prepared jointly by the parties. The jury found defendants were each liable on the five Guaranties and awarded plaintiff a total of $839,656.13. Judgment was entered for that amount.

## DISCUSSION

*1. California Rules of Court Violation*

California Rules of Court, rule 8.204(a)(1)(C) requires a brief to "[s]upport *any* reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." (Italics added.) This applies to the argument portion as well as to the statement of facts. (See *City of Lincoln v. Barringer* (2002) 102 Cal.App.4th 1211, 1239, fn. 16 [purpose of rule "is to enable appellate justices and staff attorneys to locate relevant portions of the record expeditiously without thumbing through and rereading earlier portions of a brief"].) Defendants' failure to comply with this rule in the argument portion of their briefs made our review and analysis much more time consuming than it should have been.[1]

The record contains some 425 pages of the 81 exhibits, many of which are duplicates except for differences in the various combinations of parties to them. Defendants quote from some of these documents without any direction to us as to where they might be found and where the quotes are located within the often dense documents with very fine print.

This violation was compounded by the fact that rather than "[p]rovid[ing] a summary of the significant facts" as required by California Rules of Court, rule 8.204(a)(2)(C), defendants merely quoted verbatim the 52 stipulated facts, which we were required to sift through and pick out those necessary to our analysis. In truth, we

---

[1] Plaintiff was not as diligent in this regard as it should have been either, although not to the extent as were defendants. For example, it points to facts and documents in support of its argument it gave good consideration for the Guaranties and the facts supporting its argument the Guaranties were part of one transaction without any record references.

5

could have read those in the record. The appellant's job is to summarize the facts important to the appeal, not reiterate verbatim what is in the record.

## 2. *The Affirmative Defenses*

The order after the bench trial stated the "defenses asserted by the defendants are here unavailing." Defendants claim their 31 affirmative defenses could not have been tried or decided in the bench trial based on the undisputed facts but had to be put before a jury. Defendants specifically discuss only five of those defenses in their briefs. As to the remaining defenses they make virtually no reasoned legal argument or citation to any authority in support of the argument. This forfeits this claim as to those 26 defenses. (*Benach v. County of Los Angeles* (2007) 149 Cal. App.4th 836, 852.)

## 3. *Release of Liability*

Defendants contend the Modification Agreements released them from liability under the Guaranties, barring any deficiency judgment against them.[2] The Modification Agreements state "[o]riginal Borrower (Mirrafati) shall no longer be responsible for paying the indebtedness evidenced by the Note." Defendants rely on a variety of other documents they claim are part of the transaction that define indebtedness more broadly, some of which refer to guaranties. These documents include the "governing Loan Agreements" and "Related Documents," which they say consist of notes, trust deeds, loan agreements and guaranties. From this they conclude the Modification Agreements release them from liability for all indebtedness.

They then point to the dates of execution of the Modification Agreements vis-à-vis the Guaranties. The Guaranties were, according to defendants, "purportedly" executed on February 21, 2008. Two Modification Agreements were executed February 25, 2008, effective February 21, 2008, one on April 17, 2008, to be effective March 1, 2008, and two on May 14, 2008, to be effective April 30, 2008. Thus, they claim,

---

[2] Defendants did not plead any affirmative defense to support this argument.

because the Modification Agreements were executed after the Guaranties, the release of indebtedness in the Modification Agreement extends to the liability under the Guaranties.[3]

This argument has several flaws. First, Investments was never a borrower under the Notes and was never released under the Modification Agreements. So even assuming defendants' argument has merit, which we conclude it does not, Investments would not be released.

Second, there is no logic in their argument. It is circuitous and generally unintelligible.

Third, defendants have not shown any basis for incorporating the definition of indebtedness in the other documents on which they rely. They fail to explain or point out in the record what they refer to as the "governing Loan Agreements" and we could find no such documents, or the source of the definition of "Related Documents."

Fourth, there is no basis for incorporating the definition of indebtedness in so-called "Related Documents" into the Modification Agreements. The Modification Agreements contain an integration clause stating, in part, that the agreement "contains the entire agreement between the Borrower and Lender with respect to the matters referenced herein." Defendants do not direct us to any ambiguity in the Modification Agreements that would warrant us going beyond the language of the documents themselves. (*Klein v. Chevron U.S.A., Inc.* (2012) 202 Cal.App.4th 1342, 1385 [where contract language clear and unambiguous, parties' intention determined solely from document].) And our de novo review did not reveal any ambiguity. (*Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1256.)

And if that were not enough, according to plaintiff, the Guaranties and Modification Agreements were executed "[a]s part of the same transaction." This is a

---

[3] Defendants do not distinguish between the two Guaranties effective the same date as the Modification Agreements and those effective thereafter.

7

reasonable inference to draw from the stipulated facts and evidence. It makes no sense that plaintiff would have required the Guaranties, only to release defendants from liability within the next several weeks.

Thus, the record does not support defendants' claim they were released from liability under the Guaranties.

*4. One Form of Action Rule*

Defendants claim they are not liable under the judgment because the one form of action rule prevents recovery of the deficiencies. They rely on two code sections. Code of Civil Procedure section 726, subdivision (a) provides "[t]here can be but one form of action for the recovery of any debt or the enforcement of any right secured by mortgage upon real property." Code of Civil Procedure section 580d, subdivision (a) states: "[N]o deficiency shall be owed or collected, and no deficiency judgment shall be rendered for a deficiency on a note secured by a deed of trust . . . on real property . . . in any case in which the real property . . . has been sold by the . . . trustee under power of sale contained in the . . . deed of trust."

The law permits guarantors to waive these defenses (*California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625; *Lawlor*) and defendants did so. In the Guaranties defendants agreed to waive "all rights and defenses that [they] may have because Borrower's obligation is secured by real property. . . . If Lender forecloses on any real property collateral pledged by Borrower: (1) the amount of Borrower's obligation may be reduced only by the price for which the collateral is sold at the foreclosure sale, even if the collateral is worth more than the sale price. . . . This is an unconditional and irrevocable waiver of any rights and defenses [defendants] may have because Borrower's obligation is secured by real property. These rights and defenses include, but are not limited to, any rights and defenses based upon Section 580a, 580b, 580d, or 726 of the Code of Civil Procedure."

8

Defendants completely neglect to discuss this provision of the Guaranties. Instead they merely contend the Guaranties were secured by at least three of the Trust Deeds and six others that are not at issue in this action. Defendants engage in the same semantical exercise they used in their previous argument to arrive at this conclusion. They again refer to undefined "master agreements" and "Loan Agreements," nowhere to be found in the record, and rely on the definitions of "indebtedness" and "Related Documents" to attempt to convince us the Guaranties are secured by the trust deeds. This argument fails for the same reasons as set out above.

Further, as defendants acknowledge, the trust deeds specifically do not include "guaranties" in their definitions of "Related Documents." We do not buy their claim the Guaranties must be included because the trust deeds "do not expressly exclude" them.

In addition, defendants do not provide any authority for their argument that a plaintiff may not recover a deficiency if in fact the Guaranties were secured by the Trust Deeds. Defendants also fail to discuss the fact the Trust Deeds state that they secure the "performance of any and all obligations of the *trustor*," who is either Properties or Exchanges, not Mirrafati. And even if Mirrafati is the trustor in the six trust deeds not at issue, the argument still fails for all the other reasons

Defendants failed to persuade us the one form of action rule defeats plaintiff's recovery under the Guaranties.

5. *Sham Guaranties*

Defendants claim plaintiff cannot recover under the Guaranties because they are a sham and thus unenforceable. We disagree.

Although it is against public policy for the principal obligor on a note to waive the benefits of the antideficiency protection, this ban does not extend to a guarantor. (*Cadle Co. II v. Harvey* (2000) 83 Cal.App.4th 927, 932.) A guarantor may waive this defense, as defendants did here. (*Ibid*.)

9

But the guarantor must be a "true guarantor" and not the principal obligor in disguise. (*Cadle Co. II v. Harvey*, *supra*, 83 Cal.App.4th at p. 932.) "[I]f the guarantor is actually the principal obligor, he is entitled to the unwaivable protection of the antideficiency statutes, including Code of Civil Procedure section 580d, which prohibits a deficiency judgment after nonjudicial foreclosure of real property under a power of sale (as occurred here). [Citations.]" (*River Bank America v. Diller* (1995) 38 Cal.App.4th 1400, 1420.)

Defendants claim that, although plaintiff is seeking to recover the deficiency against them, Mirrafati is in reality the principal obligor.[4] They set out a series of facts on which they base this claim, presumably including all the admissible evidence they could present at trial.

They contend Mirrafati was the original borrower and Bank of Orange relied on his financial position in making the Loans. Neither Bank of Orange nor plaintiff ever relied on the financial statements of Investments, Properties, or Exchange. The borrowers on the Notes, Exchange and Properties, are limited liability companies "owned solely by Mirrafati." Investments is also solely owned by Mirrafati. Defendants claim "there is substantial identity" between Mirrafati and Properties (*sic*) (presumably they mean Investments) with Exchange and Properties.

In addition, they argue plaintiff restructured the Loans on its own initiative without consulting with Mirrafati, and failed to explain he could become personally liable for a deficiency judgment. He never agreed for himself or Investments to guarantee the Loans. Instead, plaintiff handed him "stacks of documents" requiring his signature. They accuse plaintiff of "maneuvering" to place Exchange and Properties as borrowers "solely to allow" Mirrafati as "the true primary obligor to become a guarantor" so he could be liable for the deficiency.

---

[4] Defendants do not argue this defense invalidates the judgment against Investments.

10

Even assuming defendants could prove these facts, the claims do not stand up against the stipulated facts and documents, and the cases on which defendants rely are distinguishable.

*Lawlor*, *supra*, 222 Cal.App.4th 625 is instructive. In *Lawlor*, the defendants, who were individuals, created a limited liability company and a limited partnership to develop real property. The plaintiff required the defendants to sign guaranties. When the borrowers defaulted on the loans, the plaintiff nonjudicially foreclosed and sued the defendants for the deficiencies. In opposition to a motion for summary adjudication, the defendants argued the guaranties were a sham because they were actually the principal obligors and not true guarantors. In affirming the judgment in favor of the plaintiff, this court held the guaranties were not a sham. (*Id*. at p. 628.)

*Lawlor* explained that in deciding whether the guaranties were shams we had "to examine whether the legal relationship between the guarantor and the purported primary obligor truly separated the guarantor from the principal underlying obligation, and whether the lender required or structured the transaction in a manner designed to cast a primary obligor in the appearance of a guarantor. [Citations.]" (*Lawlor*, *supra,* 222 Cal.App.4th at p. 638.)

The facts on which the defendants relied were similar to those defendants advance here. They included that the borrowers were formed for or had the principal purpose of holding title to the real property security; the defendants were the only members or owners of the limited liability company and the limited partnership; and the lender required and relied on the guarantors' financial statements to make the loans.

We held the legal separation between the borrowers and the defendant guarantors was sufficient. Those facts did not show "a unity of interest" between the entities and the defendant individuals. (*Lawlor*, *supra,* 222 Cal.App.4th at p. 638.) No evidence revealed defendants were the primary obligors or that the lender structured the

11

loan to require the business entities to borrow the money and defendants to guarantee the loans. (*Id.* at p. 639.)

The business entities' "legal status as a limited liability company and a limited partnership, respectively, provide legal separation between those entities as the primary obligors and [d]efendants as the guarantors." (*Lawlor*, *supra*, 222 Cal.App.4th at p. 638.) There was no evidence the businesses "were not properly formed or failed to observe the necessary formalities . . . ." (*Id.* at p. 639.) "Defendants formed [the business entities] to protect themselves from those entities' liabilities. In now arguing we should disregard the legal separation those entities provided, [d]efendants seek to obtain the benefits of a course of action they did not follow." (*Id.* at p. 640.) Further, "[w]ithout evidence showing [the lender] had some role in the formation of [the business entities], there is no basis for the conclusion those entities were designed to conceal [d]efendants' status as the primary obligors." (*Ibid.*)

Our case is similar. The stipulated facts and documents show Mirrafati had already formed Properties and Exchange and transferred the Parcels to them a year before the Modification Agreements and Guaranties were executed. Plaintiff was not involved in forming or selecting the borrowers' entities or their structure. Nor did it require Properties or Exchange to become the principal obligor. Mirrafati acted on his own and transferred the Parcels without plaintiff's prior consent. Further, defendants do not suggest there is evidence Properties or Exchange were not properly formed or do not follow corporate formalities.

This case is similar to *Roberts v. Graves* (1969) 269 Cal.App.2d 410, which defendants failed to cite. In *Roberts* an individual entered an agreement to buy real property, agreeing to sign a note and trust deed. Thereafter he formed a corporation that took title and executed the note and trust deed. The individual signed the note on behalf of the corporation and also personally signed a guarantee. When the note went into default, the seller sought a deficiency judgment against the individual under the

12

guarantee.  The court held the guarantee was valid because the seller modified the agreement to allow the corporation to assume the buyer's role, releasing the individual as the primary obligor, making him a true guarantor.  (*Id.* at pp. 417-418.)

Contrast *Lawlor* and *Roberts* with *Union Bank v. Brummell* (1969) 269 Cal.App.2d 836, on which defendants rely.  There, the lender required the individual guarantor to act in that capacity rather than as the borrower so it could recover the deficiency in the event the corporate borrower defaulted.  (*Id.* at pp. 837-838.)  This is not what occurred in the case before us.

In addition, defendants' reliance on *Valinda Builders, Inc. v. Bissner* (1964) 230 Cal.App.2d 106 is of no avail.  In *Valinda*, the purchase agreement provided that in addition to the note and deed of trust, the individual buyers would guarantee performance.  After executing the agreement, the buyers formed a corporation, of which they were the only officers, directors, and shareholders, and took title to the property in its name.  The corporation also signed the note and trust deed.  When the corporation defaulted, the seller sought to recover the deficiency from the individuals.

The court held the guaranties were a sham because the individuals executed the purchase agreement in their own names and also personally guaranteed the obligation.  (*Valinda Builders, Inc. v. Bissner*, *supra*, 230 Cal.App.2d at pp. 108-109.)  The seller never agreed to have the corporation be the primary obligor nor did it release the individuals from primary liability.  (*Ibid*.)  The borrowers and the guarantors were the same people; there was no legal separation between them.

Those facts are not parallel to ours in any respect.  In contrast, Mirrafati was released from liability on the Notes when he signed the Modification Agreements.  Furthermore, Exchange and Properties, as limited liability companies, are separate legal entities from Mirrafati.

Defendants' reliance on the alleged fact Mirrafati is the sole owner of Exchange and Properties is misplaced.  First, that cannot be true.  A limited liability must

13

be made up of at least two members. (*People v. Pacific Landmark, LLC* (2005) 129 Cal.App.4th 1203, 1212.) Additionally, a limited liability company """"has a legal existence separate from its members."""" (*Ibid*.) And members of a limited liability company have the same protections as shareholders of a corporation. (*Ibid*.; Corp. Code, § 17101, subds. (a), (b).) One of the borrowers in *Lawlor* was a limited liability company and the court found that status was sufficient to "provide legal separation" from the individual guarantors. (*Lawlor, supra*, 222 Cal.App.4th at pp. 638-639.)

And it is irrelevant that Mirrafati may be the sole owner of Investments. Investments is not the borrower under the Modification Agreements.

Defendants rely on *Torrey Pines Bank v. Hoffman* (1991) 231 Cal.App.3d 308. There, the plaintiff loaned money to a revocable living trust. The husband and wife defendants who were the trust's trustors, trustees, and beneficiaries, guaranteed the loan. After the trust defaulted and the plaintiff foreclosed, it sued the defendants seeking a deficiency judgment. The court held the guarantee was a sham, concluding there was "a significant identity between" the guarantors and the trust making the trust a "'mere instrumentality'" that "never served to remove [the guarantors] from the status of primary obligors." (*Id*. at p. 321.) But this case is distinguishable because under the operative law at that time, the trustees were personally liable for any contracts they entered into on behalf of the trust. (*Lawlor*, *supra*, 222 Cal.App.4th at p. 633.) Such is not the case here.

*Lawlor* also discounted the defendants' arguments about submission of their financial statements, noting there was "nothing unusual" about a lender seeking financial information from a guarantor. (*Lawlor*, *supra*, 222 Cal.App.4th at p. 640.) This was in contrast to *River Bank America v. Diller*, *supra*, 38 Cal.App.4th 1400 where the lender obtained substantial financial information from the guarantors but none from the borrower. But *River Bank* is distinguishable because the lender there required the individual guarantors to create a business entity to borrow the money, showing the bank was "attempt[ing] to circumvent the antideficiency law. [Citation.]" (*Lawlor*, at p. 640)

14

But here, as well as in *Lawlor*, there is no evidence to show plaintiff took that action or had that intent.

In our case, it was perfectly natural for Bank of Orange to obtain Mirrafati's financial statements because he was the original borrower. There would have been no reason to ask for the financial information for Property or Exchange. And by the time defendants executed the Guaranties, Property and Exchange were de facto borrowers at least, because Mirrafati had already transferred the Parcels to them.

The claim defendants did not know they signed the Guaranties, having been handed "stacks of documents," or that they would be liable for deficiencies has nothing to do with and does not support their claim of sham guaranties.

Defendants' conclusion plaintiff acted nefariously in "maneuvering" to substitute Exchange and Properties as borrowers and restructuring the Loans "solely" for the purpose of making Mirrafati liable for the deficiency has no support in their proffered evidence and is belied by the stipulated facts and documents. The court properly found this defense was "unavailing." As in *Lawlor*, defendants "are not the primary obligors on the loans. " (*Lawlor*, *supra*, 222 Cal.App.4th at p. 638.) The guaranties are not shams.

6. *Promissory Estoppel*

Relying on a theory of promissory estoppel[5] defendants claim there is an issue as to whether they are entitled to a credit or offset on the amount of damages. Without any citation to the record, defendants claim plaintiff knew Mirrafati would spend money to build a duplex on one of the Parcels and spend additional money to improve, maintain, and market all five Parcels, if plaintiff would extend the maturity dates on the Notes for five years, "as Mirrafati requested." But instead of acceding to this request, plaintiff "promised him continuous shorter extensions if he timely made the payments on

---

[5] Defendants plead only a boilerplate affirmative defense that the the action "is barred by the doctrine of estoppel," and not a specific promissory estoppel allegation. Defendants' theory here is more akin to an offset defense.

15

the [L]oans." (*Ibid.*)  Defendants "reasonably expected" plaintiff to continue to extend the maturity date since it had done so in the past, but plaintiff "reneged" after "reap[ing] the benefits of Mirrafati's expenditures." (*Ibid.*)  Defendants argue by virtue of plaintiff's failure to keep its promise he was hundreds of thousands of dollars out-of-pocket and conclude plaintiff could not prove the exact amount of damages.  (*Ibid.*)

This argument has several flaws.  First, the entire theory of defendants' appeal is that the court, at the bench trial, decided issues that should have been tried in the jury trial.  But this was not determined during the bench trial.  This claim goes to damages, an issue that, pursuant to the order after the bench trial, was to go before the jury.

And the defense was tried to the jury.  As pointed out by plaintiff, during the jury trial Mirrafati testified both as to the alleged promise to extend the maturity dates and as to his investment of money in the Parcels.  Further, pursuant to Evidence Code section 776, defendants called Lizbeth Cano, a manager employed by plaintiff who allegedly made the promise to extend the Loans on condition defendants made the payments.  Cano testified she did not make such a promise.[6]  If there was additional evidence defendants thought relevant they could have and should have proffered it.

Defendants' argument is essentially a substantial evidence question.  When we are faced with a sufficiency of the evidence argument, we start with the presumption the judgment is correct.  (*Steele v. Youthful Offender Parole Bd.* (2008) 162 Cal.App.4th 1241, 1251-1252.)  Looking at the entire record, our only role is to decide whether "'there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the [fact finder].'  [Citations.]"  (*Ibid.*)  We must accept all

---

[6] Defendants failed to set out this testimony.  In a sufficiency of the evidence argument, an appellant is required to recite all material evidence, even that which is unfavorable, or the claim is forfeited.  (*Provost v. Regents of University of California* (2011) 201 Cal.App.4th 1289, 1304.)

16

evidence supporting the successful party, disregard the conflicting evidence, and draw all reasonable inferences to uphold the verdict. (*Minelian v. Manzella* (1989) 215 Cal.App.3d 457, 463.) We will not usurp the jury's function and reweigh the evidence. (*Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622-623) and we may not redetermine the credibility of witnesses (*Citizens Business Bank v. Gevorgian* (2013) 218 Cal.App.4th 602, 613).

Defendants had the opportunity to litigate their estoppel or offset issue. The jury obviously chose to believe Cano and not Mirrafati. Thus defendants did not prove any offset against damages and referred us to nothing else to suggest any defect in proof of the amount of damages.

In their reply brief, in response to plaintiff's argument that res judicata[7] barred defenses of misrepresentation and estoppel, defendants argued the claims were not identical and thus not barred. But the estoppel/offset defense was litigated.

And this is not a sufficient discussion of a fraud affirmative defense. Claims must be set out under a separate heading or subheading summarizing the argument and supported by reasoned legal argument. (Cal. Rules of Court, rule 8.204(a)(1)(B); *Evans v. CenterStone Development Co.* (2005) 134 Cal.App.4th 151, 160.) Nor did we consider arguments raised for the first time in the reply brief, as this was. (*State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 835-836.)

Finally, the parties' discussion of the parol evidence rule is irrelevant. Defendants point to no evidence that was excluded on this basis.

---

[7] Six months before plaintiff filed this action, defendants filed a complaint against plaintiff for breach of contract, fraud, unfair debt collection, and to quiet title and cancel certain assignment of rents. After plaintiff's demurrer was sustained with leave to amend, defendants failed to amend and the action was dismissed with prejudice.

17

*7. Consideration for the Guaranties*

In a one-paragraph argument defendants claim there was no consideration given for their execution of the Guaranties. They maintain plaintiff did not extend the maturity date or give any additional credit on the date the Guaranties were signed, making the Guaranties "ineffective." This argument has no merit for several reasons.

First, defendants again fail to give us any record references to any of the stipulated facts or documents to support this conclusory claim. Thus we could consider the claim forfeited. (*Provost v. Regents of University of California*, *supra*, 201 Cal.App.4th at p. 1304.)

Second, each of the Guaranties contains a section entitled "Guarantor's Waivers" (bold and capitalization omitted) in which, among other things, the guarantor states the Guaranty has been "given for full and ample consideration."

Third the record shows consideration. This includes execution of the Modification Agreements in which plaintiff agreed to allow Mirrafati to transfer the Parcels to Exchange and Properties and to allow the two entities to substitute in as the borrowers on the Notes; the extension of additional credit on one of the Loans; and the extension of the maturity dates on four of the Notes.

Contrary to defendants' claim, some of those documents were dated the same day as the Guaranties, so even on the face of the documents the transaction was contemporaneous. Moreover, as discussed above regarding whether defendants were released from liability based on the date of signing the Guaranties, it is reasonable to infer from the stipulated documents that the Guaranties, Modification Agreements, and documents evidencing the extension of additional credit and maturity dates were executed as part of one transaction.

Finally, defendants cite no authority stating the consideration had to have been extended prior to the date the Guaranties were executed. (*Benach v. County of Los Angeles*, *supra*, 149 Cal.App.4th at p. 852.)

18

Defendant cannot prevail on the defense of lack of consideration.

## DISPOSITION

The judgment is affirmed.  Plaintiff is entitled to costs on appeal.


THOMPSON, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.